WILLIAM LARRABEE, EDWARD THOMPSON, and JOHN HOS-
FORD, Appellants, v. S. A. PALMER, Administrator
of the Estate of F. S. PALMER, Deceased, GEORGE
N. PALMER AND MARY V. CHURCH, Interveners.

**Avails of Life Insurance:** EXEMPTIONS. Under Code, sections 1182,
2372, providing that the avails of life insurance are not subject to
the debts of deceased, but shall inure to the separate use of
deceased's husband, or wife and children, and be disposed of like
other exempt property of deceased, the fund is exempt in favor
of collateral heirs.

CONTRACTS: *Meeting of minds.* There was no "special contract or
arrangement" between one whose life was insured and his credit-
ors, whereby the avails of insurance were to be paid to the credit-
ors (Code, sections 1182, 2372), where, though deceased clearly
desired that the fund should be so distributed, and offered to pro-
vide for such a distribution, the offer was not definitely accepted
by the creditors.

**Repeal by Implication:** SUBSEQUENT RECOGNITION OF STATUTE.
Revision of 1860, section 2362, provides that avails of life insur-
ance shall be exempt, unless there be special contract to the con-
trary, and that exempt avails shall be *distributed as other property
left by deceased.* The laws of 1868, apparently, limited the exemp-
tion to husband and wife and children, and repeals all inconsist-
ent acts. The Code of 1873 incorporated the provisions of the
Revision into section 2372, without reference to the repealing act
of 1868, and it is claimed that this was due to oversight, and the
mistaken belief that section 2362 of the Revision was in force
when the Code was adopted. *Held,* in view of the fact that the
legislature amended section 2372, Code, as late as the year 1880,
there has been such recognition of it as that the provisions of the
Revision, as found in Code, section 2372, should be deemed in
force still.

*Appeal from Poweshiek District Court.*—HON. BEN
McCOY, Judge.

WEDNESDAY, FEBRUARY 3, 1897.

PLAINTIFFS, creditors of the estate of F. S. Palmer, deceased, whose claims have been established, ask an order requiring the administrator to apply the proceeds of two certain policies of life insurance, in his hands, to the payment of their claims. The administrator, as such, together with interveners, as his co-heirs at law of F. S. Palmer, deceased, claim that said proceeds belong to them as such heirs. Decree was entered in favor of the defendant and the interveners as to said fund. Plaintiffs appeal. The case was tried as in equity, and is so presented, and will be so considered on this appeal.—*Affirmed.*

*Haines & Lyman* for appellants.

*James Allison* for appellees.

GIVEN, J.—I.   The Northwestern Mutual Life Insurance Company, of Milwaukee, Wis., issued two policies of insurance upon the life of Francis S. Palmer, each for the sum of one thousand dollars, and numbered, respectively, 1,661 and 2,501. No. 1,661 contains the following: "Do assure the life of Francis Smith Palmer, of Clermont, in the county of Fayette, state of Iowa, for the sole use of the said Eulatia A. Palmer, in the amount of one thousand dollars, for the term of his natural life; and the said company do hereby promise and agree to and with the said assured well and truly to pay, or cause to be paid, the said sum assured to the said assured, her executors, administrators, or assigns, in ninety days after due notice and proof of interest (if assigned or held as security), and of the death of the said Francis Smith Palmer; and in case of the death of the said Eulatia A. Palmer before the decease of the said Francis Smith Palmer, the amount of the said insurance shall be payable to the heirs at law of the said

Francis Smith Palmer." No. 2,501 contains the following: "Do assure the life of Francis S. Palmer, of Clermont, in the county of Fayette, state of Iowa, for the sole use of the said Francis S. Palmer, in the amount of one thousand dollars, for the term of his natural life; and the said company do hereby promise and agree to and with the said assured, well and truly, to pay or cause to be paid, the said sum assured to the said assured, his executors, administrators, or assigns, in ninety days after due notice and proof of interest (if assigned or held as security), and, of the death of the said Frannis S. Palmer,—the balance of the year's premium, if any, being first deducted therefrom." On January 4, 1894, an assignment of policy No. 2,501, of which the insurance company had written notice, was made, as follows: "For a valuable consideration, the receipt whereof is hereby acknowledged, I hereby assign and transfer to Eulatia A. Palmer, my wife and creditor, of Roca, Lancaster county, Nebraska, and for her sole use and benefit, all my right, title, and interest in and to policy No. 2,501, issued by the Northwestern Mutual Life Insurance Company. In the case of the death of said assignee before the policy becomes due, then and in that case it shall be payable to the heirs or assigns of F. S. Palmer, the assignor. Francis S. Palmer. Eulatia A. Palmer." Eulatia A. Palmer, wife of F. S. Palmer, died testate, leaving her said husband surviving her, to whom she devised and bequeathed all her estate "of every name and nature." F. S. Palmer died intestate, leaving no widow, children, nor parents surviving him, his only heirs being the defendant and interveners, his brothers and sisters. The defendant, administrator, received from said insurance company, in satisfaction of said policies, the sum of two thousand and thirty-six dollars and sixty-seven cents, which he now has in his hands. He has other money in his hands which, it is conceded, was

properly ordered to be applied in payment of debts, but which is only sufficient to pay a small portion thereof. The contention is solely as to said insurance money.

II. Appellants state correctly that the ultimate question presented is whether or not they, as creditors of the estate of Francis S. Palmer, deceased, are entitled to receive payment from the proceeds of said policies. They state their contention as follows: "(1) That the proceeds of life insurance, under the law in force, is exempt from liability for decedent's debts, in favor of wife or husband and children only, and not in favor of collateral heirs. (2) If the foregoing proposition is not true, they still contend that they are entitled to a portion of the proceeds of the life insurance under an arrangement made with the decedent to that effect in his lifetime. The arrangement was made, we claim, as to the proceeds of both policies." Sections 1182 and 2372, of the Code, are as follows: Section 1182: "A policy of insurance on the life of an individual, in the absence of an agreement or assignment to the contrary, shall inure to the separate use of the husband or wife and children of said individual, independently of his or her creditors; and an endowment policy payable to the assured on attaining a certain age, shall be exempt from liability for any of his or her debts." Section 2372: "The avails of any life insurance (or any other sum of money made payable by any mutual aid or benevolent society upon the death of a member of such society) are not subject to the debts of the deceased, except by special contract or arrangement, but shall, in other respects, be disposed of like other property left by the deceased." It will be observed that both sections reserve the avails of life insurance from the payment of debts of the person whose life was insured, in the absence of an agreement, assignment,

special contract, or arrangement; also, that under section 1182 it inures to the separate use of the husband or wife and children of the deceased, and under section 2372 it is disposed of like other property left by deceased, not subject to the payment of his debts. In the absence of an agreement, assignment, special contract, or arrangement, it is clear, under these sections and the facts, that this money must go to the brothers and sisters of deceased. Said section 2372 was in the Revision of 1860, as section 2362, the same as quoted above, omitting the part in parentheses, which was inserted by Acts Eighteeth General Assembly, chapter 5. The Twelfth General Assembly enacted chapter 173, entitled "Life Insurance Law," section 18 of which is the same as said section 1182 of the Code. Section 27 of said chapter is as follows: "All acts and parts of acts relating to, or affecting life insurance companies, are hereby repealed." Appellants contend, that said section 2362 of the Revision, was repealed by sections 18 and 27 of said chapter 173, and that, being under a different title in the Revision, it was placed in the Code by oversight and mistake, and is therefore not in force. It will be noticed, that the Eighteenth General Assembly amended said section 2372, by inserting the part in parentheses, long after the Twelfth General Assembly had enacted said chapter 173, and after it had been incorporated in the present Code, excepting said repealing section. This contention is fully answered in *Rhode v. Bank*, 52 Iowa, 375 (3 N. W. Rep. 407), wherein these sections were under consideration, in which it is said, of the avails of life insurance, as follows: "It should be restricted to the classes named in section 1182, if both or one exists; but if not, it should be distributed according to the general statute for the distribution of property. This construction gives each one of the sections in question a force of its own, and, we think,

does violence to neither." It is not the law that the avails of life insurance, in the absence of agreement, assignment, special contract, or arrangment, are exempt for the payment of debts in favor of husband or wife and children only. In such case they are exempt, under said section 2372, in favor of the heirs of the deceased, the same as other property not subject to the payment of debts.

III.  Appellants allege that prior to the death of Mr. Palmer, and after the death of his wife, "there was a mutual agreement, arrangement and understanding, by which it was agreed between these plaintiffs and said decedent, that the said decedent should and would keep paid the premium for continuing said policies in force during his life, and at his death the proceeds of said policies should be applied to the payment of plaintiffs' claims." This allegation the defendant denied. The evidence by which plaintiffs claim this allegation to be established, is certain correspondence, by letters between them and Mr. Palmer, after the death of his wife. There is no evidence of any personal interview between either of the plaintiffs and Mr. Palmer on this subject. Therefore, it is to the letters alone we are to look. Notice was served on the defendants to produce the letters addressed to Mr. Palmer; but, they being unable to do so, secondary evidence was admitted as to their contents. Secondary evidence was also admitted as to the contents of letters claimed to have been written by Mr. Palmer to the plaintiff Thompson, their loss having been proven. The competency of all this evidence, and its sufficiency to establish said allegation, is questioned. Assuming, for the purpose of this inquiry, that Mr. Palmer did have authority to agree or arrange as alleged, and that the evidence relied upon as establishing the agreement, or arrangement, is all competent,

still we thind it fails to sustain the allegation.
Whether we consider the terms "special contract," or
"arrangement," as synonymous or not, it is clear
that to establish either, there must have been
a meeting of the minds of the parties. We will
not set out the letters at length, as there is much con-
tained therein not pertinent to this inquiry, but simply
notice the parts thereof bearing upon the question
whether Mr. Palmer and all or any of these plaintiffs
agreed or arranged as alleged. Two letters are in
evidence from Mr. Palmer to the plaintiff Larrabee,
and the letter-press copies of the replies thereto. Mr.
Palmer's first letter asked the advice of Mr. Lar-
rabee as to a certain offer made by the insurance
company, and Mr. Larrabee replied, advising against
accepting the offer. Mr. Palmer's next letter to Mr.
Larrabee, after expressing his desire "to have the
income of the two policies fall into the hands of my
old friends that I owe," states as follows: "It would
seem to me that there ought to be some way to do it.
My proposition is this: The amount to be paid to the
following persons as follows: William Larrabee,
$800; E. Thompson, $450; S. Mahaffy, $100; John
Hosford, $100; Mrs. Kate Star, Algona, Iowa, $200; G.
N. Palmer, $350. I doubt whether I could persuade
brother George to enter into the arrangement, as he,
being an heir in law, would have the inside track;
but I think I can in some way make an arrangement
with him on the base given above, which amount is
about what I owe him." Mr. Larrabee replied as fol-
lows: "Dear Mr. Palmer: Your letter, with papers,
received. The amounts which the company offers
to pay for the surrender of the policies is so small
it seems to me it would be hardly worth while for
you to surrender them. I do not see that you
could make any fairer proposition to your cred-
itors than you do. Should it not be convenient

for you to raise the annual payment in the future, you could assign the policies to some one who could make the distribution as you direct. For one, I would not like to deprive you of the comforts of life, to which you are entitled in your old age. As far as Mr. Mahaffy is concerned, if Mrs. Palmer settled with him, it appears to me that that should suffice. Papers returned as requested." Mr. Larrabee testifies that the papers referred to were these two policies and the proposition of the insurance company concerning the surrender value thereof. Mr. Hosford received one letter from Mr. Palmer, containing substantially the same proposition as that made to Mr. Larrabee, and saying that that proposition had also been made to Mr. Thompson. Mr. Hosford testified to the contents of the reply, saying: "I told him that I accepted the proposition." Thereafter Mr. Hosford received a letter from Mr. Palmer, in reply, which, we think, shows quite clearly that Mr. Palmer did not understand his offer to be accepted by Mr. Hosford. He says, in that letter, that he would have the correspondence with the insurance company sent to Mr. Hosford for examination, "by which it will give you a better understanding about the matter." He further says: "I wrote to the company, after Mrs. Palmer's death, to see what I could do with them, my object being to turn them over to those I owe on the base I sent you. I thought I would get a quit-claim from my brother and sister, and that would give the policy which was for Mrs. Palmer to my creditors, or I could make a will, or it would seem that there is some way to fix it. I am owing one of my brothers, and he might not be willing to surrender his claim until he was fully paid. I have not written to my brother about the matter yet. When you receive the papers I referred to above, you will more fully understand the matter, I have written to Larrabee,

and any point you may not understand he will be able to explain." After speaking further of the difficulty of arranging the matter, he says: "I conclude that I had better keep the policies in force, if I possibly can, and in the future they will bring more than I am offered now, as they will increase in value every year. But I will do as a majority (represented in dollars) of my creditors named desire." Plaintiff Thompson testifies to the receipt of a letter, now lost, from Mr. Palmer, making him a proposition; but he does not remember whether it was exactly the same as that made to Larrabee and Hosford. He says: "As I remember it, Mr. Palmer had said, in his letter to me, that he would try to pay me, if he could, while living, and, if he died, it should be paid out of the insurance policies that he sent along. I was anxious to get my money as soon as possible, and get it after his death if I could not get it any sooner. It is quite likely I told him so in my reply, but I cannot tell exactly what I wrote him." He says again: "As near as I can remember, I did not accept or reject his proposition. I wanted the money." It seems that the desire of Mr. Palmer was that the avails of this insurance should go to the plaintiffs and to certain other of his creditors, but that the claim of one of his brothers, under the policy and as a creditor, was in the way of consummating the arrangement. Be this as it may, it seems to us clear that the reply of Mr. Larrabee does not show an acceptance of the offer made, and this is certainly true as to the reply which Mr. Thompson says he made. While Mr. Hosford states that he did accept the offer, we think, as already stated, that it clearly appears, from the reply of Mr. Palmer to Hosford's last letter, that he did not so understand it. Such being our conclusion, it follows that the decree of the district court must be AFFIRMED.