HENRY HARTSON, administrator, &c.,

*v.*

PERLEY ELDEN et al.

[Filed August 28th, 1899.]

1. Under ordinary conditions a succeeding administrator takes such goods &c., of the decedent as may remain *in specie* not administered. He has no right of action to recover those goods, &c., which the preceding administrator has disposed of in the course of his administration, or to hold him to account therefor. For these, the preceding administrator or his representatives must account to the legatees or distributees of the decedent, and not to the succeeding administrator.

2. The statutory right of a succeeding administrator to sue his predecessor, to compel an accounting, only arises in cases where the preceding administrator has been removed by the order of the court because of his refusal to obey its direction, or of his waste, embezzlement or misapplication of the estate.

3. By the will the income of an estate is given for life to the widow of the testator. The will fails to dispose of the residue of the estate. The administrator *cum testamento annexo* filed a bill for interpretation of the will and instruction as to his duties, making only the next of kin and not the life tenant or her representatives, defendants. On an accounting ordered in this court in such a suit, neither the receipts of the life estate nor the disbursements therefrom, should be stated. There is no jurisdiction over the life tenant or her representatives, they not being parties.

4. The expenses incident to the safekeeping of the securities of the estate are compensated by the commissions allowed the administrator.

5. An administrator *cum testamento annexo*, having the money of the residuary estate in his hands, uninvested, awaiting determination of disputes as to its ownership, having no duty to invest it, will not be surcharged with interest, when it appears that he received no profit from its use, and was always ready to pay it over as soon as its ownership was settled.

Hartson v. Elden.

On bill, &c., and exceptions to master's report.

This matter is presented on exceptions taken to the report of a master, under a decree and order of reference made June 26th, 1894.

Nathan Elden, the testator, for whose estate the accounting is offered, made his will, dated August 16th, 1873. The will was expressed in terms which were quite doubtful and named no executor. The testator departed this life on September 10th, 1875. His widow, Hettie Elden, survived him, and was appointed by the surrogate of Cumberland county administratrix *cum testamento annexo,* on the probate of the will, on September 25th, 1875. On February 7th, 1876, she resigned her office as administratrix, and Henry Hartson, the complainant, was appointed in her place. In April, 1889, Mrs. Elden died. In August, 1889, the complainant filed the bill in this cause, asking an interpretation of the will and instructions in the performance of his duty as administrator *cum testamento annexo.* There was some litigation touching the construction of the will, and in the reported case of *Hartson* v. *Elden, 5 Dick. Ch. Rep. 522,* those questions were settled and a decree declaring the meaning of the will was made, directing the complainant to account as administrator, &c., in this court, before a master, who was ordered to audit and report the account and also to ascertain to whom the personal estate of the decedent should be distributed. This latter matter has been reported upon and declared by decree of June 4th, 1895.

It is to the account which is directed to be stated by the master that the exceptions now under consideration are made by both the complainant, accounting as administrator *cum testamento annexo,* and Joseph R. Libley and others, holding residuary interests in the estate.

The general scheme of the will, as construed and declared by this court, gave both the real and personal estate to the widow for her life. During her lifetime the complainant paid over to her all, or nearly all, the income of the estate, and shortly after her death filed the bill in this cause to settle the disputes con-

cerning the effect of the will and protect him in distributing the residue.

*Mr. Henry S. Alvord*, for the complainant.

*Mr. Leverett Newcomb*, for the defendants.

GREY, V. C.

The different exceptions of the several parties will be considered and disposed of in their order.

The complainant excepts to the account reported by the master, first, because the complainant is charged with $200 interest on Lombard University. notes, and he alleges that there is nothing in the testimony to show why such a charge is made. At the hearing it appeared that $200 had been deposited to the credit of the cause in this court, and both counsel agreed that this deposit was the interest mentioned in this exception. On this ground this exception was withdrawn.

The complainant's second exception is that the complainant is surcharged with a note for $50, made by one John A. Temple, part of the assets of the testator which Hettie Elden disposed of during the period in which she was administering the estate. In such cases the second administrator takes all of the goods, &c., of the decedent which remain *in specie* as at his death, and has no right under ordinary circumstances to call his predecessor to account for her preceding disposition of the estate. *Brownlee* v. *Lockwood, 5 C. E. Gr. 239; Carrick* v. *Carrick, 8 C. E. Gr. 364; Thiefes* v. *Mason, 10 Dick. Ch. Rep. 460.* Having no right to recover the assets which the previous administrator had administered, the second administrator cannot be surcharged because he did not recover them. The situation is not changed by the fact, which the master recites, that the complainant on Hettie's death (some thirteen years after the disposition of this note by her) became the administrator of her estate, and that he could then have collected the amount of the note from her estate. Hettie in her lifetime, and the representatives of her estate after her death, were responsible to the legatees or distributees of

Nathan Elden's estate for her default as his administratrix. The complainant had no lawful right, as administrator of Hettie's estate, to take her assets and pay them to himself as succeeding administrator of Nathan Elden's estate, to satisfy her default, committed while administratrix of Nathan's estate. Her action as first administrator in disposing of the assets of the decedent's estate, must be settled between her or her representatives and those who had a right to call her to account. When she disposed of those assets she is held to have administered them, and only what remains of the decedent's estate *in specie*, comes to her succeeding administrator. This second exception of complainant is sustained, and the accountant should not be surcharged with the Temple note.

The complainant's third exception is that the complainant accountant is by the master charged with two sums of script issued to him in 1883, for

| | | |
|---|---|---|
| Dividends on Northern Pacific stock of the estate | $233 | 10 |
| Interest on that script to 1888 | 69 | 90 |
| | $303 | 00 |

that this sum, $303, was a profit, payable under the will to Hettie as life tenant, and if it is as a matter of general accounting charged to the complainant, because received by him as administrator, it should also be credited to him as payable to Hettie Elden or to her estate, because it was a profit received in her lifetime.

The testimony of Mr. Hartson, tending to show the *status* of this item, whether it was principal or income, is quite confused, but upon considering it with the evidence of the officers of the railroad, it is made clear that the $233.10 was script, issued for the earnings of the road. Under the will this belonged to Mrs. Elden as life tenant. The interest on the script followed the same ownership. The master has, in schedule No. 3, surcharged the complainant with these items, amounting to $303, and they form part of the total of the debits— $20,531.17. He nowhere credits the complainant with this

31

$303 as due or paid to Mrs. Elden or to her representatives, as under the method of accounting was done with the other profits paid to her. The master evidently intended that this $303 should go to Mrs. Elden's representatives, for he so states it in the body of his report and in schedule No. 5. The complaint is not that he does not admit that this sum is due to her representatives, but that he has debited the complainant with it, in the account which ascertains the balance, $109.56, due from the accountant, and has not on the credit side of that account allowed it as payable to the representatives of the life tenant, Mrs. Elden.

The master, in stating the account, has correctly separated the real estate items from those which are personal, but has followed the method of the complainant, and included the income during Hettie Elden's life, and the principal and income earned after her death, in the same statement. These matters are entirely distinct and separate, and should not be jointly stated in this account. The discussion of the complainant's eighth exception gives the reasons why this course should be followed. When the re-statement of the account is made, the item $303 will not appear as a charge, and consequently need not be allowed as a credit.

The complainant's fourth and sixth exceptions are based upon the same grounds, that the master did not allow the complainant for his expenditures in hiring a safe-deposit box in which to store the papers, &c., of the estate. The master properly held this to be expense incident to the performance of the duty of the administrator to care for the property of the decedent, for which his commissions were a compensation. The complainant's fourth and sixth exceptions should be overruled.

The complainant's fifth exception is to the master's disallowance of an expenditure of $35, paid to the surrogate of Cumberland county on May 7th, 1892, as the cost of stating an account. The master in his statement of the account offered by the complainant states this item at $30. The voucher produced shows the expenditure to have been $35. The master disallows it as "an expenditure which should not have been incurred during

Hartson v. Elden.

the pendency of this suit." The proofs show that this account was rendered by the complainant to the surrogate of the county, before whom, under ordinary circumstances, his account should have been stated. That officer has large powers to compel the stating of such an account. He had several times noticed the complainant to account before him, threatening him with citations if he did not. At that time, May, 1892, it had not yet been determined that this court would order an accounting here. Under these circumstances the complainant appears to have been justified in obeying the surrogate's repeated demands that he account before him, and the incidental costs thus incurred and paid by the complainant should be allowed him. The complainant's fifth exception is sustained.

The complainant's seventh exception is that the master credited the complainant with but $637.63 as the difference between the amount of the inventory and the amount of the proceeds of sales of the property so inventoried. The exceptant claims that " the said credit by way of difference should be a much larger amount." This exception was properly withdrawn at the argument. To contend that an item of allowance is not as large as it should be, is quite too indefinite a complaint to be made the subject of judicial inquiry.

The complainant further files an eighth exception that the master has attempted to set forth the amount of debits and credits due to and from the estate of Hettie Elden. The complainant claims that all items should be charged or credited against or for the accountant solely as administrator, &c., of Nathan Elden and not otherwise. The principle of accounting here insisted upon is correct. Under it the complainant's second exception has been sustained and the defendants' first exception is overruled, but the complainant himself is somewhat at fault in presenting an account in this suit, to which neither Hettie Elden nor her representative is a party, charging himself with the income due to Hettie Elden during her lifetime. The master has continued the same fault. On this inquiry there can be no ascertainment of any balance which may be payable to Mrs. Hettie Elden's representatives, for the reason above inti-

mated that she was no party to this suit in her lifetime, nor has her representatives, as such, been made a party since her death. No criticism by way of pleading, proof or argument has been presented because of this omission, and the only phase of the accounting which can presently be considered is the sufficiency of the account reported by the master, as it relates to that part of the estate belonging to the defendants in the particulars excepted to by the complainant on the one side, and the next of kin of the decedent (not considering Hettie Elden to be one of the next of kin) on the other side. The other matters referred to the master in the order of June 24th, 1894, directing him to ascertain to whom the personal estate of Nathan Elden should be distributed, have been fully reported upon by the master, under date of May 11th, 1895, and finally concluded by a decree ratifying that report under date of June 4th, 1895, and cannot be in any way again presented in this court for further consideration or review. When the account now excepted to attempts to charge the complainant with income due to Hettie Elden in her lifetime, it makes him primarily liable to the remaindermen for moneys not due them, and obliges him to explain the proper expenditures of that money in which they have no interest, and to produce to them vouchers to justify it. All the items for charge of income earned during Hettie Elden's lifetime, and all items of expenditure, including commissions, allowable against that income, have no place in this account, because as stated neither Hettie nor her representatives is a party to this suit. The representative of her estate cannot be bound by either charge or discharge when not in court in the cause, and the defendant next of kin have no right to call the complainant to account for his receipts or disbursements of Hettie Elden's share of the estate. In the re-statement all these items should be excluded from both sides of the account, which should be limited to the accounting for the property to which it has been heretofore decreed the defendants are entitled, which is the principal of the estate and the income earned since Hettie Elden's death.

This disposes of the complainant's exceptions.

The defendants' first exception is that the master failed to

make any report of the item of $400 in cash, which appeared in the inventory of Hettie Elden, the original administratrix of Nathan Elden, which came to her hands whilst she was so acting. The defendants claim that it was the duty of the complainant as administrator to have collected this sum, of which his predecessor had taken charge as administratrix during the time that she served in that capacity. There is no proof whatever that this $400, inventoried by Mrs. Elden, in September, 1875, as part of the testator's estate, and taken into her possession, existed in any form, specie or otherwise, in February, 1876, when the complainant received his letters of administration. The complainant never received the money, but it is claimed that he is chargeable because he knew that Mrs. Elden had received and expended it during the time she was acting as administratrix of Nathan Elden, and it is insisted that he should have compelled her to pay it to him as her successor. But Hettie Elden had a right, as administratrix, to hold and expend this money if she did it properly, and her representative has a right to his day in court to show such rightful expenditure. This day can only be given in a suit in which the parties have, by proper allegation, had an issue presented. The exception is controlled by the principles declared in the decisions hereinbefore stated in allowing the complainant's second exception. The second administrator has no right to call the original administratrix to account for assets disposed of by her while she was administering the estate. The second administrator takes only such assets as remain *in specie* as the decedent left them. See *Thiefes* v. *Mason* and other cases above cited. Counsel for the defendants insist that the complainant, because he became administrator of Hettie Elden's estate in 1889, should have taken this $400 out of her estate and paid it to himself as administrator of Nathan Elden's estate. But the complainant, as administrator of Hettie Elden's estate, owed no such duty to himself as administrator of Nathan Elden's estate. Hettie Elden, in her lifetime, was responsible to the creditors, legatees and distributees of Nathan Elden for her management of those assets of his estate which came to her hands. When she died

her administrator might have been liable to the creditors, lega-
tees or distributees of Nathan Elden for any defaults which
Hettie, in her lifetime, while administratrix of Nathan Elden,
had committed.   But neither Hettie in her lifetime, nor her
representatives after her death, was liable to her successor in
the administration of the estate of Nathan for assets of that
estate by her taken and disposed of while she was adminis-
tratrix.   They are considered in the law to have been by her
administered, and the right of suit to call her to account in
such matters lies only with those interested in the estate at the
time she undertook its administration.   The case of *McDonald
& Glynn* v. *O' Connoll's Administrators, 10 Vr. 317*, is cited as
authority for the contention that a succeeding administrator may
compel his predecessor to account for those goods of the estate
which the predecessor has administered.   An examination of this
case and the several statutes on which it is based will show that
the right in the successor to compel such an accounting only arises
when the predecessor *has been removed or discharged for some of
the causes specified in the act*, such as refusal to obey an order of
the court or the wasting, embezzlement or misapplication of the
estate.   The statutory gift of this right of action may be found
as early as the act of December, 1784 (*Pat. L. p. 59 § 8*), but
it is plainly dependent upon the existence of those conditions
of danger to the estate and the removal of the preceding admin-
istrators for that reason.   The case of *McDonald & Glynn* v.
*O' Connoll's Administrators*, above cited, discusses the operation
of these statutes and declares that the right of action of the suc-
ceeding against the preceding administrator, who had been re-
moved by the orphans court for wasting the estate, is exclusively
statutory.   In the same decision, the cases of *Brownlee* v. *Lock-
wood* and *Carrick* v. *Carrick, ubi supra*, are quoted with approval
as illustrations of the principle that an administrator *de bonis
non* may not call upon the representatives of the preceding admin-
istrator for the proceeds of the estate disposed of by him.   The
distinction is not difficult.   Where the administrator, proceed-
ing in the ordinary course of duty, dies or is permitted to resign
before he has completely disposed of the estate, his successor

takes the portion not administered and proceeds to complete the settlement.   In such cases the first administrator and his representatives must answer to the creditors, legatees and distributees of the decedent for the acts and omissions of the first administrator in settling the estate.   Where the administrator is discharged or removed for any of the statutory causes, such as contempt of court, waste or embezzlement, he must instantly account to his successor not only for the non-administered estate but also for that which he has already disposed of, in order that the estate may be at once protected from the danger threatening it by reason of the misconduct of the unfaithful officer.   The *McDonald Case* above cited has not, in the subsequent consideration of this question, been treated as antagonistic to the previous decisions.   See *Bradway* v. *Holmes, 5 Dick. Ch. Rep. 315; Lindsley* v. *Dodd, 8 Dick. Ch. Rep. 70.*

In the matter before me, Mrs. Hettie Elden, the first administratrix, resigned the administration of her own motion.   The tendency of the proof indicates that she applied the $400 to meet just claims against the estate.   There was no order for her removal for any of the statutory causes.   The statutory conditions required to vest in her successor a right to call her to account were non-existent.   He cannot be surcharged for omitting to use the statutory powers above recited.

The defendants' first exception is overruled.

The defendants' second exception is that the master failed to charge the complainant with interest on the moneys collected and held by him as administrator from January 1st, 1890, to November 13th, 1894, when he paid them into court.   The evidence shows that during the period named the complainant did not receive any interest on the moneys in hand.   He did keep those moneys on deposit in his bank, mixed with his own personal moneys, in his own individual name, and not in a separate account as administrator, as he properly should have kept them. He explains this by showing that he was at this period holding all these moneys, liable to be called upon to pay them over at any time.   The excuse does not justify the mixing of the moneys of the estate with his own private funds.   It was the

complainant's duty to have kept the estate's money separately from all other moneys. The failure to do this was not because of any bad faith or for any profit to the complainant, but simply for his own convenience. No express duty was charged upon him to put the estate's money at interest, and he was bound to pay it over at any time that the litigation concerning it, then pending, might result in an order. It appears he always had in readiness the amount necessary to meet the call. It would have been difficult, if not impossible, to have placed the money at interest, and he should not be required to pay interest out of his own estate when he failed to make such investment.

The defendants' second exception should be overruled.

The defendants' third exception is that the master did not charge the complainant with interest on the Temple note for $50, &c. As it has been above determined that the master erred in charging the complainant with the principal of this note, in the foregoing discussion of the complainant's second exception, the claim of interest on it must also be rejected.

The defendants' third exception should be overruled.

The defendants' fourth exception is that the master has allowed the complainant the highest rates of commission permissible by law. The case shows that the complainant has been obliged to give to the performance of his duties as administrator an unusual amount of attention and labor, and has, throughout, acted in entire good faith. He has had many difficulties occasioned by the uncertain expressions in the testator's will and also attendant upon an accounting with unknown next of kin, who lived widely apart, who were unexpectedly made distributees by the failure of the legacies. The circumstances of the case justified the allowance of the highest commission.

The fourth exception of the defendants should be overruled.

The defendants' fifth exception is that the master has not charged to the life beneficiary that proper share of commissions which the life beneficiary should pay. This exception has significance only so far as the master's method has overcharged the defendants, who take the residue. When the account shall be

restated so that the income up to Hettie Elden's death shall be taken out of the accounting, there will be no confusion between the charges of commissions on the life tenant's share of the estate and on the residue.

The defendants' sixth exception is to the allowance of the counsel fees paid by the complainant from time to time for the advice and services of his counsel. The difficulties attendant upon the settlement of this estate justified the complainant in obtaining the advice of counsel. The expenditure covers a period of some five years. It was actually made, and does not appear, in view of the uncertainties of the case, to be unreasonable.

The defendants' sixth objection should be overruled.

The defendants further insist that the complainant should be charged with all the costs of correcting the complainant's alleged erroneous accounts. If the errors were exclusively those of the complainant there would be force in the suggestion, but where most of them are errors in favor of, or mistakenly insisted upon by, the defendants, it would be unjust to charge the costs of their correction to the complainant.

I will advise an order that the master restate the account in accordance with the views above expressed.