## In re Estate of W. F. Donaldson, Deceased.

Insurance: RIGHTS OF CREDITORS WHEN PAYABLE TO ESTATE. To render the proceeds of a life insurance policy payable to the estate of deceased liable for the satisfaction of a specific claim against the estate, there must have been an assignment of the fund or a definite portion thereof for that purpose, so that deceased parted with all control thereover. Evidence held insufficient to constitute such assignment.

*Appeal from Audubon District Court.*— Hon. A. B. Thor-
nell, Judge.

Saturday, December 17, 1904.

This is a proceeding by one Kate F. Hamilton to establish a claim on a note held by her against the estate of W. F. Donaldson, deceased, and for an order directing the administrator to pay the same out of the proceeds of a certain life insurance policy issued to the deceased and payable to his estate. The trial court allowed the claim, but denied the order. Claimant appeals.— *Affirmed.*

*V. E. Horton* and *H. U. Funk,* for appellant.

*Myers & Blume,* for appellees.

Deemer, C. J.— On August 1, 1895, the deceased executed a note for the sum of $740.80 to the claimant, due August 1, 1896. It is alleged that this note was for money borrowed by the maker thereof, who at the time orally agreed with the payee that he would take out a policy of life insurance, payable to his estate, in order that the proceeds thereof should be for the benefit and security of his creditors, and especially for the benefit and security of the claimant herein to whatever amount might be due and owing

her at the time of the maker's decease. The administrator denied the alleged agreement, and pleaded usury in the note. The widow of the deceased in her own behalf, and as guardian of a minor child, filed a petition of intervention, in which she claimed the proceeds of the life insurance as exempt from the debts of her husband, and denied the agreement pleaded by the claimant. The case was tried upon a stipulation, some testimony introduced by the claimant in the form of a deposition, and certain other oral testimony delivered from the witness stand. The trial court found that interveners were entitled to the insurance money, and claimant appeals.

There is no doubt that claimant loaned the deceased some money in December of the year 1894, and that deceased executed the note, which was filed with the administrator as evidence thereof. This note was filed with the administrator, and he allowed the same to the extent of $1,100. As neither he nor the widow or heir make any question regarding this allowance, that feature is out of the case.

May 22, 1895, the deceased took out a policy of life insurance in the Bankers' Life Insurance Company of Des Moines in the sum of $2,000, payable to his estate. At the time of borrowing the money, the execution of the note and the taking out of the policy, deceased was an unmarried man. Afterwards, and on January 8, 1896, he married, and had one child by this woman before his death. Some time after his marriage he took out another policy of insurance in the sum of $1,000, making his then wife the beneficiary therein. Donaldson died in November of the year 1900, and one Bilharz was appointed administrator of his estate. This administrator collected from the Bankers' Life Insurance Company the sum of $2,025 on the policy issued by it, and held the proceeds at the time this action was commenced. The deceased owned no real estate, and had but $25 in personal property, aside from the proceeds of the life insurance.

The controversy in the case is largely over the facts, although appellees insist that, even if an agreement such as is claimed is shown, it is too indefinite to justify a court in finding that there was any pledge or equitable assignment of the policy or of the proceeds thereof to the claimant. It is further argued that such an agreement, if made, is invalid, for the reason that it had relation to property to be acquired in the future, and therefore cannot be enforced.

The evidence shows that in December of the year 1894 the claimant, who is a sister-in-law of the deceased, borrowed of an agent of a loan and trust company something like $700, giving a mortgage upon her land as security therefor. This money she turned over to the deceased, loaning it to him that he might engage in a mercantile venture. It was also agreed between the parties that, to make sure of the return of the money if the debt was not paid before the death of the borrower, he would take out a policy of insurance on his life in the sum of $1,000. The exact words, according to the witness, were: "He promised his sister Kate, at the time the seven hundred dollars was paid over to him, that he would take out a policy of life insurance in the sum of $1,000, so that, if anything should happen before he had repaid the money loaned, she would be sure of receiving it." After this conversation, deceased stated to the same witness that he had taken out the life insurance policy he had promised his sister at the time she loaned him the money.

Under our statutes the avails of any life insurance are not subject to the debts of the deceased, except by special contract or arrangement, and shall be disposed of like other property left by the deceased. Code, section 3313. So that, unless a special contract or arrangement with the deceased for the payment of the avails to his creditor be shown, the widow and heirs at law are entitled thereto, exempt from the debts of the deceased. This contract or arrangement requires a meeting of the minds of the parties, and all the essentials of a valid and enforceable contract. *Larrabee v. Pal-*

*mer,* 101 Iowa, 132.   We have to inquire, then, whether any valid and enforceable contract was made between claimant and the deceased, and, if so, the nature of that contract.

According to the testimony, deceased was to take out an $1,000 policy of life insurance, so that, if anything happened before he had repaid the money, claimant would be sure of receiving it.   He did not take out an $1,000 policy, but a $2,000 one; and the only evidence that this was in performance of his alleged contract is that he said at one time that he had taken out the policy he had promised his sister he would at the time she loaned him the money.   The policy taken out is not the exact one promised, and by inference, only, may we say that this policy was the one intended when the money was loaned.   The $1,000 policy which he did take out was made payable to his wife as beneficiary.

Another significant fact is that the note in suit, which is the basis of the claim, was not made until August, 1895, some three months after the $2,000 policy of life insurance was issued, and nothing was said in this note about the policy, nor was any assignment of the policy made or requested.

The truth, as we apprehend it about this controversy, is this: Deceased, when he borrowed the money of his sister, was an unmarried man.   It was supposed that, if he took out a life insurance policy payable to his estate, the avails thereof, in case of death, could be reached by his creditors; and he promised to take out a policy in the sum of $1,000, not as security for the loan, as plaintiff alleges, but to the end that, if anything happened before he had repaid the money, claimant would be sure of receiving it.   No assignment was spoken of, no thought of a lien suggested; simply a promise to take out a policy of insurance in a certain amount, in the belief that, if he died before paying his sister, she might get her pay from the avails of his life insurance. This is something entirely different from a special contract

or arrangement to pay the specific debt from the avails of a life insurance policy. At most, there was nothing but an equitable assignment of a part of the policy or the proceeds thereof, and in such cases there must in fact be an assignment, oral or written, of the fund, or some definite proportion thereof — such an agreement as that the assignor parts with all control thereover. *Foss v. Cobler,* 105 Iowa, 728; *Fairbanks v. Welshans,* 55 Neb. 574 (75 N. W. Rep. 865); *Mally v. Mally,* 121 Iowa, 237. There was no apportionment here of any part of the fund; and a mere agreement to pay out of a part of a particular fund is not sufficient, according to the weight of authority, to constitute an equitable assignment. *Bank v. Sproat,* 55 Minn. 14 (56 N. W. Rep. 254); *Dirimple v. State Bank,* 91 Wis. 601 (65 N. W. Rep. 501).

We are constrained to hold that no such special contract or arrangement between the debtor and his creditor with reference to the policy of insurance or its avails is shown as to justify a court in awarding any part of the funds in the hands of the administrator to the payment of the claimant's demand. As said in *Herriman v. McKee,* 49 Iowa, 185, the testimony to establish such an agreement as is here claimed must be clear and satisfactory. In that case, as in this, there was testimony that the insured intended to pay the note out of the avails of a life insurance policy; but this was held insufficient. There, as here, a note and contract were executed, but nothing was said therein about the policy of insurance. It was also held in that case that the testimony must be such as to prove a contract, and, under the circumstances, with clearness and explicitness. That case really rules this one, for the evidence here is no stronger than in that case. The testimony convinces us, as it did the trial court, that the deceased promised to take out a life insurance policy payable to his estate in the belief that, if he died, the avails thereof could be used for the payment of his debts. He made no special contract or agreement that it should be

so used, but both parties relied upon a mistaken view of the law. At any rate, they made no enforceable contract of assignment or pledge.

The decree and order of the trial court are correct, and the judgment is *affirmed*.