DOLSON W. HILL, et al., by the Northern Trust Company, Guardian of the Estates of Said Minors, et al., Respondents, v. L. B. HANNA, as Executor of the Last Will and Testament of Willis H. Hill, Deceased, and Individually, Appellant.

(222 N. W. 459.)

413

Opinion filed December 1, 1928.

414

*Divet, Shure, Holl, Frame, Murphy, & Thorp,* for appellant.

*Pierce, Tenneson, Cupler, & Stambaugh,* for respondents.

CHRISTIANSON, J. Willis H. Hill died testate a resident of Cass county, North Dakota, on July 5, 1922. At the time of his death there was an insurance policy upon his life issued by the Mutual Life Insurance Company of New York, December 10, 1919, made payable to the "executors, administrators or assigns" of the insured. The policy contained provisions permitting the insured to assign the policy and to change beneficiary therein. Said Willis H. Hill left surviving him as his only heirs at law, Mary C. Hill, his widow, and his sons Arthur Glenn Hill, Dolson W. Hill and Beverly H. Hill, and his daughters. Verda Rose Hill and Edna Marjorie Hill. He left the following last will:

"I will to my wife, Mary Catherin Hill, W½ Sec. 24, Rich. Town. also my Fargo home (to my daughter Verda Hill, N. W. P. Sec. 24 and S. W. ¼ to Sec. 24 to Marjie Hill at my wife's death).

"To Glenn Hill, I will N.E.¼ Section 24 and SE¼ of 13, Rich. Town.

"To Dolson Hill, I will S½ of Sec. 23, Rich. Town.

"To Beverly Hill, I will E¼ Sec. 23 & S.W.¼ of 14, Rich. Town.

"To Verda Hill, I will SW¼ Sec. 13, Rich. Town.

"To Marjie Hill, I will NW¼ Sec. 19, Erie Town.

"My ½ sec. 9 Erie town also ½ sec. in Dows Town and my Erie property is to be sold when it is advisable and the money used to pay my debts and the mortgage on my Fargo home and the rest used

to pay mortgages on farm equally. My life insurance is also to be used for this, the insurance is $25,000.00.

"Mr. L. B. Hanna is to have the handling of same and he is to use his best judgment in getting the most money for the estate."

It will be noted that no executor was named in the will; but apparently the provisions referring to L. B. Hanna were construed as evidencing an intention on the part of the testator to commit the execution of the will and the administration of the estate to said L. B. Hanna as letters testamentary were issued to him in like manner as if he had been named executor. Comp. Laws 1913, § 5734.

The insurance company paid the avails of the policy to said L. B. Hanna, on or about September 19, 1922, and he duly included the same in the inventory and appraisement filed by him, in the county court, on October 28, 1922, as executor of the last will and testament of Willis H. Hill, deceased. Hanna did not deposit the proceeds of the insurance policy in a separate account as trustee or executor, but deposited the same in his personal account in a bank or banks with whom he was carrying an account. Some question having arisen as to whether the money belonged to the heirs at law of Willis H. Hill, free from claims of creditors of the decedent, or belonged to the general estate of Willis H. Hill, deceased, and was subject to debts of the decedent, Hanna informed the parties that he would not distribute the moneys until the question of ownership had been determined.

The surviving widow, Mary C. Hill, assigned her interest in the insurance policy and the avails thereof to John Conrad and the present action was brought in the district court of Cass county by Conrad, an assignee of Mary C. Hill, and the other heirs at law of said Willis H. Hill. The plaintiffs claim that they are entitled to the avails of the insurance policy by virtue of § 8719 which provides:

"The avails of a life insurance policy or of a contract payable by any mutual aid or benevolent society, when made payable to the personal representatives of a deceased, his heirs or estate upon the death of a member of such society or of such insured shall not be subject to the debts of the decedent except by special contract, but shall be inventoried and distributed to the heirs or the heirs at law of such decedent."

The trial court ordered judgment in favor of the plaintiffs, and the defendant has appealed.

It is contended by the appellant that the avails of the insurance policy "were subjected to decedent's debts by special contract as provided in § 8719." In our opinion this contention is not well founded. The mandate of § 8719 is that "the avails of a life insurance policy . . . when made payable to the personal representatives of a deceased, his heirs or estate, upon the death . . . of such insured shall not be subject to the debts of the decedent except by special contract." This language seems too clear for controversy. It requires that before any creditor may subject the avails of a life insurance contract to a debt of a decedent, the creditor must be able to point to and establish some "special contract" made with the insured whereby it was agreed that the avails of the policy should be subject to the particular debt or debts which it is sought to enforce.

In Larrabee v. Palmer, 101 Iowa, 132, 70 N. W. 100; O'Melia v. Hoffmeyer, 119 Iowa, 444, 93 N. W. 497, and in Re Donaldson, 126 Iowa, 174, 101 N. W. 870, the supreme court of Iowa had occasion to consider a statute of that state which, so far as concerns the question involved here, is strikingly like § 8719. The Iowa statute provided: "The avails of any life insurance (or any sum of money made payable by any mutual aid or benevolent society upon the death of a member of such society) are not subject to the debts of the deceased, except by special contract or arrangement, but shall, in other respects, be disposed of like other property left by the deceased." In Larrabee v. Palmer, certain negotiations and certain correspondence were had between the insured and one of his creditors whereby it was quite evident the insured desired that the avails of the policy should go in payment of his indebtedness to such creditor; but there was no showing that the insured's offer had been accepted by the creditor, and, the court held that consequently no special contract or arrangement had been effected within the purview of the section and that the avails of the insurance policy were not subject to the claim of the creditor. The rule announced in Larrabee v. Palmer was reaffirmed in O'Melia v. Hoffmeyer, and again in Re Donaldson. In the decision in the latter case the court said:

"Under our statutes the avails of any life insurance are not subject

to the debts of the deceased, except by special contract or arrangement, and shall be disposed of like other property left by the deceased. Code 3313. So that, unless a special contract or arrangement with the deceased for the payment of the avails to his creditor be shown, the widow and heirs at law are entitled thereto, exempt from the debts of the deceased. This contract or arrangement requires a meeting of the minds of the parties, and all the essentials of a valid and enforceable contract." (126 Iowa, 176, 101 N. W. 871.)

The reasoning of the Iowa court appeals to us as being correct, and is directly applicable to the "special contract" requirement of § 8719. When the lawmakers said "special contract" they doubtless had in mind an express or explicit contract; "one which clearly defines and settles the reciprocal rights of the parties, as distinguished from one which must be made out, and its terms ascertained, by the inference of the law from the circumstances of the transaction." Black's Law Dict. 2d ed.; Pence v. Beckman, 11 Ind. App. 263, 54 Am. St. Rep. 505, 39 N. E. 169.

There is no contention that there was any agreement between Willis H. Hill and any of his creditors that he should will the avails of the insurance policy, or any part thereof, to a creditor or creditors in payment of a debt or debts. And the provisions in the will wholly fail to establish, or constitute, a special contract between Willis H. Hill and any of his creditors, that the avails of the life insurance policy in suit shall be subject to, and utilized in payment of, claims of creditors.

It is contended, however, that Willis H. Hill by his will disposed of the avails of the life insurance policy to his creditors.

We are of the opinion that this contention cannot be sustained. While the insured had the right to dispose of the life insurance policy in suit, or the avails thereof, by his will, no such disposition was made in this case. When Willis H. Hill caused the life insurance policy in suit to be issued and made the same payable to his personal representatives, he must have intended that upon his death the avails of the policy should be distributed to his heirs at law in accordance with § 8719, unless he, during his life, in some proper manner, made some other disposition of the policy or the avails thereof. Jorgensen v. DeViney, ante, 63, 222 N. W. 464. It will not be assumed that he subsequently departed from his original purpose, but rather that he adhered to it.

In order to warrant a court in finding that an insured has disposed by will of an insurance policy, or the avails of a policy, falling within the provisions of § 8719, the language used must clearly and specifically indicate an intention on the part of the insured to dispose of the avails of the policy otherwise than provided in § 8719. Jorgensen v. De-Viney, supra. The will involved here makes specific disposition of certain real property. Thereafter it gives directions that certain real property "is to be sold when it is advisable and the money used to pay" the debts of the testator and the mortgage on his "Fargo home and the rest used to pay mortgages on farm equally." It then goes on: "My life insurance is also to be used for this." The will does not purport to dispose of all the property of the testator; it does not purport to bequeath the avails of the decedent's life insurance to anyone in trust for the purpose of paying creditors of the decedent. The language is:

"My . . . property is to be sold when it is advisable and the money used to pay my debts and the mortgage on my Fargo home and the rest used to pay mortgages on farm equally. My life insurance is also to be used for this, the insurance is $25,000.00.

"Mr. L. B. Hanna is to have the handling of the same and he is to use his best judgment in getting the most money for the estate."

The trial court in a memorandum opinion expressed the view that the statement in the will regarding life insurance "stands on no stronger ground than merely a request to his beneficiaries under the policy." And the trial court further suggested that the purpose of the testator to merely give advice is further indicated by the concluding paragraph of the will "that Mr. L. B. Hanna is to have the handling of the same and he is to use his best judgment in getting the most money for the estate."

We agree with these observations of the trial court. In our opinion the testator did not manifest any intention to dispose of the life insurance policy or the avails thereof by will but simply indicated what he regarded as a wise disposition of such avails, without, however, limiting or qualifying in any manner the right of the heirs at law to take as beneficiaries under the policy. If the testator intended that the avails of his life insurance should become general assets of his estate, then obviously, it was unnecessary to include a direction that the execu-

420

tor should have the handling of such funds, as, of course, the executor would have the handling of all moneys and property of the estate.

The language used in the will as regards the life insurance clearly does not amount to a bequest, and is not inconsistent with an intention on the part of the testator that the avails of the insurance policy shall be distributed to his heirs at law in accordance with the provisions of the policy and the statute. If, at the time he made the will, the testator had executed a written instrument directed to his creditors to the effect that it was his desire that the avails of his insurance policy should go in payment of his debts, such instrument would have been ineffectual to accomplish the desired purpose unless the offer therein contained had been accepted by the creditor so as to create a special contract. Larrabee v. Palmer, 101 Iowa, 132, 70 N. W. 100; and Re Donaldson, 126 Iowa, 174, 101 N. W. 870. And, in our opinion, the provision in the will stands in no better position. It is merely a direction given by the insured expressing his wish or advice, but does not amount to either a bequest of the avails of the insurance policy or to a special contract. If the avails of the policy had been part of the general estate of the testator, and he in his will had made specific bequest of this fund to his heirs at law, in the proportions provided by the law of succession, and the will had further contained a provision similar to the one involved here as regards the use of such moneys for the payment of encumbrances, it would hardly be contended that the latter expression amounted to anything more than the expression of a wish or a suggestion on the part of the testator. In other words, the provisions could and would have been construed so as to give effect to both and, as we have already indicated, an insured will not be assumed to have intended to change the disposition made in a policy falling within the provisions of § 8719, unless the provisions in his will are wholly inconsistent with a continued intention on the part of the insured that the avails of such policy shall be distributed to the heirs at law of the decedent.

We are of the opinion that the avails of the policy belong, and are distributable, to the heirs at law of Willis H. Hill, under § 8719.

The plaintiffs claimed, and the trial court allowed, a recovery against the defendant Hanna for interest at legal rate from November 19, 1922. Appellant asserts that interest should not have been awarded.

We have carefully considered all the facts and circumstances in the case and find some difficulty in either affirming or reversing the trial court's decision upon the question of interest. For reasons hereinafter stated we are rather inclined to the view that there ought to be a new trial of this issue.

We are wholly agreed that such uncertainty existed as to the ownership of the money. that the defendant Hanna was fully justified in not disbursing the same to the heirs at law of Willis H. Hill until the question of ownership had been determined. The evidence shows that shortly after the money was received by Hanna certain creditors of the decedent claimed that the insurance moneys were available and should be utilized in payment of their claims; but that the defendant, although in doubt, was rather inclined to the view that the money belonged to the heirs at law of Willis H. Hill, deceased, and was not subject to debts of the decedent. The evidence is also to the effect that one of the plaintiffs suggested to the defendant that the money be used to pay off in part some of the outstanding real estate mortgages (apparently in accord with the recommendations of the testator). It is freely conceded that if the defendant had adopted this suggestion the entire sum would have been lost. The record is replete with evidence that the defendant Hanna in no manner misled any of the parties as to his attitude. On October 28, 1922, he filed in the county court a full and complete inventory and appraisement of the estate of Willis H. Hill and in such inventory he duly listed the cash received from the life insurance company. In reports subsequently filed in the county court he stated that he had received and had in his possession such life insurance moneys giving a detailed statement of the amount thereof. The record is also replete with evidence that the defendant Hanna at all times when the question was broached to him, either by a creditor or any of the heirs, informed them that he was of the belief that the money belonged to the heirs, but that owing to the uncertainty he could not and would not pay it over to them until the question of ownership was definitely settled.

It is apparent that the defendant was in a somewhat difficult position. He could not safely disburse the money; if he utilized it as part of the estate of Willis H. Hill, deceased, he might be required to make good the amount so disbursed to the heirs at law. If he disbursed

it 'to the heirs at law he might be required to make good to the estate the amount disbursed. The plaintiffs resided in the immediate vicinity. They were fully informed of the facts. They knew that they would not receive the money until the question of ownership had been determined and there was nothing to prevent them from instituting an action or proceeding to determine such ownership. The records of this court indicate that generally controversies over similar funds have been presented for determination through proceedings or actions instituted by the heirs claiming ownership thereof; and it seems this is the first action in which it has been sought to hold an executor or administrator, who collected the money, under § 8719, liable for interest during the time the money was in his possession. The moneys were not paid to Hanna for investment. The controversy over the moneys was of such nature that it might readily be terminated at any moment and it was the duty of the defendant to have the money available to hand over at any time the question of ownership was determined. It is difficult to see how he could have invested the moneys for any particular period of time. In fact it does not seem to be seriously contended that the defendant was under any duty to invest the money. The claim for interest seems to be predicated largely if not wholly upon the proposition that the defendant did not deposit the moneys received from the life insurance company in an account as executor or trustee but deposited the same in his individual account.

. It is elementary that a trustee may not make use of trust property for his private or individual purpose or to derive any profit therefrom; if he uses such property for his own benefit and any loss occurs, the loss must be borne by the trustee; and if he derives any profit therefrom, the beneficiary has the right to demand the profit actually realized by the trustee, or interest on the principal sum. 25 Cal. Jur. p. 342; Comp. Laws 1913, §§ 6282, 6289, 6290.

The authorities are all agreed that an administrator, executor, or trustee ought not to intermingle trust moneys with his own but they are not wholly agreed as to the liability resulting from such intermingling. See 1 Perry, Trusts, 6th ed. § 468; 3 Woerner, Administration, pp. 1766, 1767. See also § 6289, supra. Some courts hold that such intermingling ipso facto renders an administrator, executor or trustee liable for interest even though there is no duty to invest

or otherwise utilize the funds for the benefit of the estate or the beneficiaries, and no intention to use, and no use of, the funds and no advantage resulting to the administrator, executor or trustee from the trust moneys. Other courts hold that where there is no duty to invest or use the moneys in behalf of the estate or the beneficiaries and it is shown that the intermingling was in fact made without any intention to use the trust funds or in any manner profit thereby and that the funds were not in fact used but were at all times kept ready and available for payment to those to whom they belong there is no liability for interest. Mayer v. McCracken, 245 Ill. 551, 584, 92 N. E. 355; Hartson v. Elden, 58 N. J. Eq. 478, 44 Atl. 156; Re Sarment, 123 Cal. 331, 333, 55 Pac. 1015; Rapalje v. Hall, 1 Sandf. Ch. 399; Re Nesmith, 140 N. Y. 609, 35 N. E. 942; Re Shotwell, 49 Minn. 170, 51 N. W. 909, 52 N. W. 1078. We are inclined to the view that *the latter rule is more in harmony with the principles of our jurisprudence.* Comp. Laws 1913, §§ 6289, 6290. The law respects form less than substance. Comp. Laws 1913, § 7262. It is doubtless true that an administrator, executor, or trustee who mingles trust funds with his own in a strict technical sense subjects the money to his own use; and where there is no showing to the contrary use of the funds may be presumed, and interest charged. But where it is shown that such intermingling was done as a matter of convenience without any intention to actually use the money and without any use thereof, either directly or indirectly, where no injury or loss resulted to the beneficiaries, and the trust moneys have been kept available for disbursement as fully as though they had been deposited in a separate account, then, we believe that an administrator, executor, or trustee should not be charged with interest on such funds merely because of the intermingling.

The trial court apparently took a contrary view and was of the opinion that a mere intermingling of funds was sufficient to render the defendant liable for interest. This view was expressed during the course of the trial and it seems that as a consequence the plaintiffs abandoned all effort to show any use of the funds by the defendant and the evidence on this phase of the case is quite limited. The evidence does show, however, that Hanna received no interest from the bank on the accounts in which the trust moneys were deposited. Further-

more, the evidence in the case does not show any actual personal use by Hanna of the life insurance moneys or that he received any benefit therefrom either directly or indirectly. But, as said, the evidence on this phase of the case is quite limited and in view of all the circumstances we have concluded that the ends of justice will be best subserved by affording both parties an opportunity to adduce further evidence on the question of interest. If upon such trial the evidence shows that the defendant Hanna deposited the funds in his own individual account as a matter of convenience without any intention of using the funds or deriving any benefit or profit therefrom and that he did not subsequently use the funds but in fact kept them available for disbursement as soon as the ownership was determined, then he should not, in our opinion, be held liable for interest thereon. On the other hand, if the evidence shows that he actually used the funds, then he should be required either to pay legal interest on the moneys used or pay over whatever profit was earned,—the plaintiffs to have the option of claiming either the profits or legal interest.

The action was instituted against the defendant Hanna as executor of the last will and testament of Willis H. Hill, deceased. After the trial, and before the entry of judgment, an amendment of the title of the action was allowed so as to make the action one against Hanna individually as well as in his representative capacity. No change whatever was made in any of the pleadings. The only change was in the title of the action. It is contended by the appellant that the trial court erred in allowing such amendment. In our opinion the statute authorizes amendments of this character. Comp. Laws 1913, § 7482. See also, 24 C. J. p. 825; 1 Standard, Proc. p. 908. Indeed the amendment was hardly necessary. The complaint clearly stated all the pertinent and controlling facts. It alleged the issuance of an insurance policy by the Mutual Life Insurance Company of New York on or about December 10, 1919, upon the life of Willis H. Hill in the sum of $25,000, payable upon the death of the insured to his executors or administrators; that the insured Hill died on or about July 5, 1922, testate, a resident of Cass county, North Dakota; that his last will and testament was duly admitted to probate by the county court of Cass county on or about September 11, 1922, and the defendant L. B. Hanna appointed executor thereof; that said defendant duly qualified

as such and letters testamentary were issued to him; that on or about October 17, 1922, the defendant Hanna as executor of the last will and testament of Willis H. Hill collected $23,963.70, the avails of said life insurance policy from the life insurance company; that he received and still retains the avails of said life insurance policy to the use. and benefit of the heirs at law of said Willis H. Hill and the plaintiffs herein; that Willis H. Hill left surviving him as his only heirs at law, Mary C. Hill, his widow, and Arthur Glenn Hill, Dolson W. Hill, Beverly H. Hill, Verda Rose Hill and Edna Marjorie Hill, his only children; that on or about February 1, 1925 said Mary C. Hill, widow of said deceased, sold, assigned and transferred to the plaintiff John Conrad all her right, title, and ownership in and to the proceeds of said insurance policy. The complaint clearly alleged a cause of action against the defendant for moneys received by him under § 8719, Comp. Laws 1913 upon a life insurance policy falling within the purview of that section, and distributable to the heirs at law of the insured. In the circumstances, his designation in the title of the action as executor neither added to nor diminished his individual responsibility, and according to some of the authorities, such designation might well have been rejected as surplusage. 24 C. J. p. 825. In any event, it is inconceivable that the defendant could have been prejudiced by the amendment and we think the trial court committed no error in allowing it.

It follows from what has been said that the judgment appealed from must be and it is modified so as to award a new trial upon the question whether the plaintiffs are entitled to recover interest, and except as so modified it is affirmed.

NUESSLE, Ch. J., and BIRDZELL, BURKE, and BURR, JJ., concur.