VÉRONICKA MAYER, Appellee, vs. JOHN McCRACKEN et al.
Appellants.

*Opinion filed June 29, 1910.*

1. PLEADING—*filing pleas waives alleged error in overruling demurrer.* By filing pleas to a bill after a demurrer to the bill has been overruled the defendants waive their right to take advantage of the alleged error in overruling the demurrer.

2. SAME—*when right to question ruling of court on sufficiency of pleas is waived.* The right to assign error on the action of the court in holding certain pleas to be insufficient is waived where one defendant files an answer and the other, though electing to stand by his pleas and being defaulted, voluntarily joins with the other parties in a stipulation to consolidate the case with other pending causes and try them as one upon the merits, and thereafter defends on the merits as to all matters involved.

3. SAME—*when alleged error in refusing leave to file an additional plea cannot be availed of.* Alleged error in refusing leave to one defendant to file an additional plea cannot be availed of where he answered the bill and properly set up as matters of defense the same matters alleged in the refused plea, and thereby secured the same consideration of such matters as though the plea had been filed.

4. WILLS—*policy of court is to adopt construction giving estate of inheritance to first taker.* It is the policy of the courts of Illinois to adopt such a construction of a will, when possible, as will give an estate of inheritance to the first taker, unless there are other clauses in the will which disclose clearly that it was the intention of the testator to limit or qualify the estate devised.

5. SAME—*when testator's daughter takes a base or determinable fee.* A devise of certain real estate to the testator's named daughter, "her heirs and assigns forever," followed by a valid executory devise of such land to the testator's wife in case the daughter should die before the wife, provided that if the daughter married and had children the land should belong to them, gives to the daughter a base or determinable fee, which will not become absolute unless the daughter survives the executory devisee.

6. SAME—*condemnation money takes place of land and is subject to the same limitations.* Where land in which a base or determinable fee is created by will is condemned in a proceeding to which all parties having an interest in the land were defendants, the condemnation money takes the place of the land, and is subject to the same limitations, under the will, as the land itself.

7. DEEDS—*owner of base fee cannot convey a fee simple absolute.* One who owns the fee in land subject to the condition that it shall be defeated by her death without children during the lifetime of her mother cannot, while the happening of the condition which shall determine the estate is possible, convey a fee simple absolute.

8. SAME—*when deed should not be set aside.* A deed, made upon the advice of the grantor's attorney, conveying the grantor's interest in certain property for the purpose of terminating litigation over the same, should not, in the absence of any fraud by the grantee, be set aside as having been made by the grantor in ignorance of her rights, where she had previously asserted such rights in two proceedings in which she was represented by the same attorney who advised her to make the deed, and who was, therefore, as was the grantor, familiar with all the facts.

9. ESTOPPEL—*when parties are estopped to deny construction put upon will.* The husband and the administrator of a deceased woman are bound by the construction, obtained on a bill voluntarily filed by her for that purpose, of the will under which the property claimed by them was devised to her, and they are estopped to insist that such construction was incorrect.

10. SAME—*when person is estopped to claim articles of personal property.* One who, upon citation by the probate court and a hearing, complies with the order of the court to turn over certain articles of personal property to the administrator of the estate of her deceased daughter, and who does not appeal from such order, is estopped, in a subsequent chancery proceeding, to claim such articles as her own.

11. SAME—*when mother is estopped to claim from daughter's administrator funds expended by him.* A mother who turns over notes and mortgages to her daughter's administrator without informing him that she claims the property as her own since the daughter's death, and who by her acts and conduct induces the administrator to believe such property is a part of the daughter's estate until the administrator is about to make his final report, when she notifies him of her claim and institutes proceedings to obtain the property, is estopped to claim from the administrator any of the fund properly expended by him, as administrator, prior to receiving notice of the mother's claim.

12. EXECUTORS AND ADMINISTRATORS—*what constitutes a part of the intestate's estate.* One who has a base or determinable fee which will become absolute if she survives the executory devisee is entitled to the full use of the land during her lifetime, and if the land is condemned and the condemnation money invested, she is entitled, during her lifetime, to the interest from such fund, and

any property bought with the interest money, as well as any interest money unexpended at her death, is part of her estate.

13. SAME—*when administrator is entitled to protection.* An administrator who receives property from the intestate's mother as being the property of the intestate, and so treats it in good faith without notice of any adverse claim thereto by the mother until he is about to make his final report, is entitled, as against her, to be protected as to payments and expenditures made before receiving notice of such adverse claim, which were for the protection of the property itself, even though he made such payments without any order of the court.

14. SAME—*when an administrator is not chargeable with interest.* The mere fact that an administrator, upon collecting assets, deposits the proceeds in his bank account in his own name is not ground for charging him with interest, where it is shown that he always had on hand in such bank more than enough to pay the amount he held as administrator, and that he never used the money in any way, being ready at all times to pay it over on demand.

APPEAL from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

John B. Mayer, a resident of Chicago, died June 3, 1892, leaving him surviving his widow, Veronicka Mayer, and his daughter, Anna Mayer, as his only heirs-at-law. He left a will, which was on June 20, 1892, admitted to probate by the probate court of Cook county. The first clause of his will directed the payment of his debts and funeral expenses. The second clause devised and bequeathed to his wife all real and personal property except the real estate specifically mentioned in the subsequent clauses. The third clause was as follows: "I give, devise and bequeath unto my beloved daughter, Anna Mayer, the property situated and known as No. 147 Center street, in the city of Chicago, county of Cook and State of Illinois, her heirs and assigns forever." The fourth clause devised to his wife, her heirs and assigns forever, the property known as No. 149 Center street. By the fifth clause he directed his executrix to sell certain real estate known as No. 445 Wells street, in the city of Chicago, and out of the proceeds of

sale to pay all his debts, and to divide the balance, if any, equally between his wife and daughter. The sixth clause directed the executrix to receive $2000 upon a policy of insurance, to expend not to exceed $500 thereof for a burial lot and a monument, and to divide the remaining $1500 equally between his wife and daughter. The seventh clause provided that upon the death of his wife all property, real and personal, bequeathed to her by the will should belong to his daughter, Anna Mayer, her heirs and assigns forever. The eighth clause was as follows: "I order and direct that should my beloved daughter, Anna Mayer, die before my beloved wife, Veronicka Mayer, then all the property, real or personal, and effects of every name and nature, which I now bequeath to her, shall belong to my beloved wife, Veronicka Mayer, her heirs and assigns forever, providing that if she is married and has children, then the estate shall belong to her children and my beloved wife, Veronicka Mayer, shall be their guardian." The ninth and last clause nominated his wife executrix of the will.

Letters testamentary were issued to Veronicka Mayer by the probate court of Cook county, and on January 16, 1895, the executrix made final settlement of the estate and was discharged. Thereafter, on April 2, 1895, Veronicka Mayer and Anna Mayer entered into a contract with Clarence Buckingham, who was acting for the Northwestern Elevated Railroad Company, by which they agreed to sell to Buckingham the premises at 147 and 149 Center street for $26,500. A cash payment of $2000 was made at the time of the execution of the contract, and the balance was, by the terms thereof, to be paid upon -the delivery of a deed. At the time this contract was made a suit by the railroad company against Veronicka Mayer and Anna Mayer to condemn the premises at 147 Center street was pending in the superior court of Cook county. On May 23, 1895, an additional payment of $12,500 was made upon the contract, and Veronicka Mayer and Anna Mayer thereupon on

that date executed and delivered to Buckingham a deed for the premises at 149 Center street. The condemnation suit proceeded to judgment, and on June 21, 1895, the sum of $11,918.50 was awarded as compensation for the premises, and the railroad company was ordered to pay that amount to the county treasurer of Cook county for the benefit of the owners and parties interested, which payment was made to the county treasurer on the same day.

On June 28, 1895, Anna Mayer filed a bill in the superior court of Cook county against Veronicka Mayer, the Northwestern Elevated Railroad Company and the county treasurer of Cook county, alleging the death and heirship of John B. Mayer, setting forth his will; alleging the condemnation by the railroad company of the premises at 147 Center street and the payment to the county treasurer of the sum awarded as compensation therefor, and praying that the will of John B. Mayer be construed; that Veronicka Mayer or some suitable person be appointed trustee of the money which had been paid to the county treasurer by the railroad company for the benefit of the owners of the property at 147 Center street, and that such trustee be decreed to hold such funds in trust for the benefit of such person or persons as may be now or hereafter entitled to the same or the income thereof, and that the county treasurer be required to pay over to such trustee the money paid to him by the railroad company, as aforesaid. All the defendants answered the bill, admitting the material allegations thereof and the right of the complainant to the relief sought by her. On the same day, June 28, upon the written consent of all the parties to the suit, the superior court entered a decree in said cause, finding that the will of John B. Mayer provided, among other things, that the property at 147 Center street upon his death should belong to Anna Mayer and her heirs and assigns forever, subject to the condition that should the said Anna Mayer die before Veronicka Mayer, then the said property should belong to Ver-

onicka Mayer, her heirs and assigns forever, provided that
if she (meaning Anna Mayer) should marry and have chil-
dren and die before the death of Veronicka Mayer, then
the said property should belong to such children. The
decree appointed Veronicka Mayer trustee of the money
which had been paid to the county treasurer by the railroad
company, amounting to $11,918.50, and ordered the county
treasurer to pay over to her, as such trustee, said sum of
money for the following purposes: First, to pay the costs
of suit; and second, to invest and re-invest the remainder
thereof in good interest-bearing securities, and to pay over
to Anna Mayer, at least once in each year during the life-
time of the latter, the income derived from the same. The
decree further directed that if Anna Mayer should not sur-
vive Veronicka Mayer, then said sum of money should be-
long absolutely to Veronicka Mayer, her heirs and assigns
forever, unless Anna Mayer should in the meantime marry
and have children, in which event, if Anna Mayer should
not survive her mother, said sum should belong to the chil-
dren of Anna Mayer, if any, but if Anna Mayer should
survive her mother, then the balance of said sum remaining
in the hands of Veronicka Mayer at the time of her death
should belong absolutely to Anna Mayer, her heirs and as-
signs forever.

On June 29, 1895, Veronicka Mayer and Anna Mayer
executed and delivered to Buckingham a warranty deed to
the premises at 147 Center street for the expressed con-
sideration of $12,500. The county treasurer endorsed the
check for $11,918.50, which he had received from the
railroad company, to Veronicka Mayer, trustee. The only
other endorsement upon that check is that of Veronicka
Mayer, trustee. On July 1, 1895, said check was presented
to the Metropolitan Trust and Savings Bank of Chicago,
and there was therewith purchased from the bank two notes
secured by real estate mortgages, one for $10,000, with $15
accrued interest, and the other for $1700, with $21 ac-

crued interest. The balance of the proceeds of the check was paid in cash, but it does not appear to whom such payment was made, other than the presumption arising from the endorsements on the check that the money was paid to Veronicka Mayer. Anna Mayer, however, afterwards collected the interest on these notes, and when payments were made upon principal they were made to Anna Mayer and were usually used by her in the purchase of other notes from the bank. The account kept by the bank of these transactions was in the name of Anna Mayer.

On July 14, 1903, Anna Mayer was married to John McCracken. On March 28, 1904, she re-sold to the said bank a note for $1000, receiving the cash therefor, and on the same day purchased a house and lot on Burling street, in Chicago, for $4500 and received a deed therefor, paying $1000 in cash and giving seven promissory notes for $500 each, together with a trust deed on the premises, to secure the balance of the purchase price. She and her husband and her mother moved into this house and continued to occupy it as a residence until her death, which occurred May 12, 1904. She died without issue and left her surviving her husband and her mother as her only heirs-at-law. They continued to reside upon said premises until some time in February, 1906.

A few weeks after the death of Anna McCracken her husband suggested to Veronicka Mayer that it would be necessary to have administration upon her estate, and suggested the appointment of Thomas C. Dennehy as administrator and the employment of Patrick McHugh as attorney to represent the estate. Mrs. Mayer had only met Dennehy once, at the funeral of her daughter, and had no acquaintance with McHugh. She testified upon the trial of this cause that when McCracken first spoke to her about the appointment of an administrator he told her that she would have to surrender all the notes and mortgages to the probate court, and that she replied that she did not think she

had to give them up because it was her understanding that under her husband's will they belonged to her, but that Mc-Cracken insisted that she would have to give them up or get into trouble; that she then said that she did not want to get into trouble and would give them up. McCracken denied this conversation about the notes and mortgages. The notes in question, as well as securities belonging to Mrs. Mayer, were then, and had been for many years, kept in a safety deposit box in a bank. Shortly after the conversation with McCracken, Mrs. Mayer went to the bank and took from the box three mortgages,—one for the principal sum of $7500, another for the principal sum of $1800 and the third for the principal sum of $1200. She, in company with McCracken, then went to the office of Thomas C. Dennehy, where, in the presence of McCracken and Patrick McHugh, she gave these notes and mortgages to Dennehy without saying that she claimed any interest in them.

On June 23, 1904, a petition, signed by McCracken and Mrs. Mayer, requesting the appointment of Dennehy as administrator of the estate of Anna McCracken, was filed in the probate court of Cook county. This petition stated that the deceased left real estate of the value of $1000 and personal property of the value of $10,800. On the same day the petition was filed, letters of administration were issued to Dennehy, who afterwards filed an inventory showing the estate to consist of the Burling street property, worth about $4500 and encumbered by a trust deed for $3500, and the three promissory notes which had been delivered to him by Mrs. Mayer, as above stated; also chattel property not specified but stated to be of the value of $545. An appraisement bill was also filed, showing a sealskin sack appraised at $250, a sable boa appraised at $40, a muff appraised at $25, rings appraised at $405, a bracelet appraised at $15, a watch and chain appraised at $40, a piano appraised at $250, and books and book case appraised at $130.

During the month of October, 1905, Mrs. Mayer was notified that the administrator would make final settlement of the estate on the 28th day of that month. On October 26, 1905, two days before the time fixed for final settlement of the estate, Mrs. Mayer filed her bill of complaint in the circuit court of Cook county against Dennehy and McCracken, claiming that the notes and mortgages which she had delivered to Dennehy were her individual property by reason of the terms and provisions of her husband's will, and praying that Dennehy and McCracken be required by order of court to deliver and surrender the same to her. The defendants filed a demurrer to the amended bill, and as a special ground of demurrer set up that the probate court of Cook county had prior and exclusive jurisdiction of and concerning all the matters contained in the bill. On January 4, 1906, the demurrer was sustained and the bill was dismissed.

On January 12, 1906, McCracken filed a petition for citation in the probate court of Cook county against Mrs. Mayer, alleging that she then had in her possession the chattel property described in the appraisement bill, belonging to the estate of Anna McCracken, which she refused to deliver to the administrator. A citation was thereupon issued against Mrs. Mayer, which came on for hearing on February 3, 1906, and resulted in an order finding that Mrs. Mayer had in her possession a sealskin sack, a sable boa, a fur muff and a gold watch and chain belonging to the estate and ordering her to deliver the same to the administrator. She complied with this order.

On February 16, 1906, the administrator filed his report in the probate court showing the receipt of $2500 upon the principal of the $7500 note and the receipt of $906.75 interest on notes; also showing the following disbursements: On July 16, 1904, $100 to Patrick McHugh for services as attorney for the administrator; on July 20, 1904, $30.65 court costs; on September 3, 1904, $1000 to

John McCracken on his distributive share; on September 28, 1904, $515 to McCracken on his distributive share to pay one of the notes of $500 and accrued interest, secured by the trust deed on the Burling street property; on March 28, 1905, $530 to McCracken on his distributive share for the same purpose; on June 17, 1905, $85 to McCracken on his distributive share to pay for painting the Burling street house; $5 for publishing notice to present claims against the estate, and $3 appearance fee in the suit brought by Mrs. Mayer in the circuit court; on January 6, 1906, $200 to Patrick McHugh for services as attorney for the administrator, and the retention of $400 upon administrator's compensation; also showing that the administrator still had on hand the promissory notes mentioned in the inventory and that the only payment upon principal was that of $2500 on the $7500 note. These disbursements were all established upon the trial below by the production of receipts and the testimony of witnesses.

On February 23, 1906, Veronicka Mayer filed her sworn petition in the probate court of Cook county in the matter of the estate of Anna McCracken, setting out the will of John B. Mayer, the marriage, death and heirship of her daughter, and alleging that after the death of her husband the petitioner and her daughter, with the proceeds derived from the property devised to them by the will, purchased a number of securities, which were at the death of her daughter being kept in a safety deposit box; that after the death of her daughter, John McCracken, her daughter's husband, stated to petitioner that it was necessary to turn over said securities to Thomas C. Dennehy, and that having confidence in McCracken and being ignorant as to the requirements of the law but insisting to McCracken that said securities belonged to her, petitioner turned them over to Dennehy, who now has the same in his possession, believing them to be part of the estate of Anna McCracken and has inventoried them as such. The petition further al-

leges that said securities belong to the petitioner, and prays that Dennehy be ordered to account for and surrender the same to her. The administrator answered this petition, averring that the said securities were purchased by the deceased with her own money and were owned by her at the time of her death, and that after his appointment as administrator Mrs. Mayer delivered them to him as property of said estate and made no claim thereto. The answer denies that Mrs. Mayer has any interest in the securities or is entitled to the relief sought by her petition. A hearing was had upon the petition and answer, and on March 6, 1906, an order was entered denying the prayer and dismissing the petition. Veronicka Mayer prosecuted an appeal from this order to the circuit court of Cook county.

On April 2, 1906, McCracken brought a forcible detainer suit against Mrs. Mayer before a justice of the peace for the possession of the Burling street property. During the pendency of this suit Mrs. Mayer vacated the property and the suit was dismissed. Thereupon McCracken took possession of the premises and has held such possession ever since.

On May 25, 1906, McCracken filed a bill in the superior court of Cook county against Mrs. Mayer for the partition of the Burling street property, alleging that, subject to the encumbrance thereon, he was entitled to an estate of homestead therein, and was also the owner in fee, by descent from Anna McCracken, of an undivided one-half thereof and was entitled to dower in the other half, and that Veronicka Mayer was the owner of such other undivided one-half, subject to said encumbrance, homestead and dower. Mrs. Mayer had, previous to the filing of the bill for partition, employed Fred Plotke, an attorney of Chicago, to look after her interests in the settlement of the estate of her daughter, and he was the attorney who had instituted the suit in the circuit court and who had filed the petition for her in the probate court seeking to compel the adminis-

245—36

trator to surrender the notes and securities to Mrs. Mayer. Upon being served with summons in the partition suit Mrs. Mayer consulted Plotke, who, after negotiations for settlement with Patrick McHugh, the solicitor for McCracken in the partition suit, advised Mrs. Mayer to sell her interest in the Burling street property for $100, and, with her consent, communicated an offer to that effect to McHugh. The offer was accepted by McCracken, and June 14, 1906, Mrs. Mayer executed and delivered to McCracken a quitclaim deed to the Burling street property in consideration of the payment to her of $100, and the partition suit was thereupon dismissed.

On the same day the bill for partition was filed, Dennehy, as administrator, commenced an action of replevin in the superior court of Cook county against Mrs. Mayer for the recovery of the piano listed in the appraisement bill of the estate. While this suit was pending, on March 2, 1908, Veronicka Mayer filed her bill in the circuit court of Cook county against John McCracken to set aside the deed to the Burling street property which she had executed and delivered to him on June 14, 1906. The grounds relied upon for the relief sought by this bill are, that the money invested by Anna McCracken in the Burling street property was derived from the proceeds of sale of the property at 147 Center street, which, under the will of John B. Mayer, is alleged to have vested in the complainant upon the death of her daughter without issue; that McCracken, McHugh and her solicitor, Plotke, falsely represented to her that she only owned an undivided one-half interest in the Burling street property, that such interest was subject to the mortgage indebtedness thereon and to homestead and dower in favor of McCracken and was worth not to exceed $100, and that, relying upon such representations and in ignorance of her rights in the premises and the extent and value of her interest, she, after the institution of the partition suit by McCracken, executed and delivered to him the

deed which she seeks to set aside; that she is now informed and believes that she was at the time of making said deed the owner in fee of the whole of the property, subject only to the trust deed thereon, and that McCracken has never had any interest therein; that the pretended sale to Mc-Cracken for $100 is unconscionable and contrary to equity, and she offers to return said amount to him. The bill further alleges that the notes and mortgages and chattel property which she turned over to the administrator represented the proceeds of sale of the Center street property, and that all of such notes, mortgages and property upon the death of her daughter vested in the complainant by reason of the provisions of the will of John B. Mayer, but that the administrator has collected large sums of money upon such notes and has turned over a portion thereof to McCracken, who has applied a portion thereof in reduction and payment of the mortgage indebtedness upon the Burling street property, and that the payments so made upon such indebtedness inure to the benefit of the complainant.

McCracken answered the bill, denying that the proceeds of sale derived from the property at 147 Center street vested in the complainant, upon the death of her daughter, by virtue of the provisions of the will of John B. Mayer, and alleging that Anna Mayer was by said will given an indefeasible estate of inheritance in said property. The answer denies that Anna McCracken invested any of the money received from her father's estate in the Burling street property, and alleges that the cash payment of $1000 was made by McCracken with his individual money; alleges the delivery of the notes and mortgages by Mrs. Mayer to the administrator without any claim by her thereto and with the belief that they belonged to Anna Mc-Cracken, deceased; sets up the partition suit, the appearance of Plotke therein as solicitor for Mrs. Mayer, the proposition by Plotke for settlement by paying Mrs. Mayer $100 for her interest, the acceptance of such offer in order

to save the expenses of a sale, the execution and delivery of the deed by Mrs. Mayer in conformity with the settlement, and the payment by him of $100 upon the execution and delivery of the deed. It also sets up the filing of the bill by Mrs. Mayer in the circuit court on October 26, 1905, the claims made by her in that bill, the filing of the demurrer thereto and the action of the court thereon; also the filing of the petition by Mrs. Mayer in the probate court on February 2, 1906, against the administrator and the order of the court thereon, and alleges that the circuit court and probate court, by the orders and decrees entered in those causes, determined that Mrs. Mayer had no interest in the notes and mortgages held by her daughter at the time of her death.

On March 18, 1908, Mrs. Mayer filed another bill in the superior court of Cook county against John McCracken and Thomas C. Dennehy, individually and as administrator of the estate of Anna McCracken, deceased, claiming the notes and mortgages and chattel property left by her daughter, by virtue of the provisions of the will of John B. Mayer; alleging that she was induced to deliver the notes and securities to the administrator by representations made to her by McCracken that it was necessary so to do and under the belief that the same would be returned to her in process of administration, and that she turned over to the administrator the wearing apparel, fur garments and chattels of her daughter upon the order of the probate court; that McCracken claims to own all of said notes, securities and personal property as husband and heir-at-law of Anna McCracken and claims the right to have the administrator turn over all of said property to him in settlement of the estate, and that the administrator has, in part settlement of the estate, turned over to McCracken a portion of the notes and securities, as well as the chattel property, without any order of court, and threatens to turn over and surrender to McCracken the whole of said estate; that Mc-

Cracken is wholly without means, and if permitted to come into possession of said property the same will be lost to the complainant; that Dennehy has collected the interest on said notes and a portion of the principal and has paid to McCracken a part thereof, and continues to pay to Mc-Cracken sums of money therefrom under the claim that McCracken is the owner thereof. The bill prays that Dennehy, individually and as administrator, be required to account for each and all of said notes and mortgages and the money acquired therefrom, and be ordered to surrender and pay over same, together with the chattel property, to the complainant, and that McCracken be required to account to the complainant for such portion thereof as has been received by him from Dennehy, and that a full and complete accounting be had with reference to all of said matters and things between complainant and Dennehy, individually and as administrator, and McCracken; that the complainant's title as the owner of said property under the will of John B. Mayer be established, and to that end that the said will be construed, and that it be adjudged and decreed that by said will Anna McCracken (formerly Anna Mayer) took and acquired only a base or determinable fee in and to the estate devised to her, and that upon her death the complainant became entitled to the whole of said estate as executory devisee under said will; that McCracken be adjudged to have no interest in said property as heir-at-law of Anna McCracken or otherwise, and that the entire estate held by Anna McCracken at the time of her death be adjudged and decreed to be the estate devised and bequeathed to her by John B. Mayer, and that said estate be decreed to be a determinable estate under said will and the complainant adjudged to take the whole thereof under said will, and that Dennehy be required and directed to so regard and deal with the same and to account to the complainant in respect to all the assets thereof.

To this bill defendants interposed a demurrer, which was overruled and the defendants were ruled to answer. Thereafter the defendants filed two pleas of *res judicata*. The first plea set up the proceedings commenced by Veronicka Mayer in the circuit court on October 26, 1905, heretofore noted, and the second plea set up the petition filed in the probate court by Veronicka Mayer on February 23, 1906, the answer of the administrator thereto and the judgment of the court denying the prayer and dismissing the petition. Upon a hearing these pleas were held insufficient and were overruled. Thereupon the solicitor for the defendants asked leave to file a further and additional plea on behalf of the administrator, which was refused. This plea was exhibited to the court with the motion asking leave to file the same. It alleged the appointment of Dennehy as administrator upon the joint petition of the complainant and McCracken; the delivery of the notes and securities to the administrator by Mrs. Mayer without informing him that she claimed any interest therein; the collection by him of $3406.75 upon the notes and the disbursement of $2868.65 of the money so collected in due course of administration, as shown by his report to the probate court, which is attached as an exhibit to the plea; his lack of knowledge of any claim on the part of the complainant to any interest in said notes or the proceeds thereof until after he had paid out said sum of $2868.65 and until after the expiration of the time fixed by the statute for the settlement of the estate, and relied upon the same as an estoppel against complainant in so far as she seeks by her bill to recover said sum of $2868.65 from him.

McCracken elected to stand by his pleas, and the bill was thereupon taken as confessed against him. Dennehy, individually and as administrator, filed an answer setting forth the contents of the petition filed by the complainant and McCracken in the probate court for the appointment of Dennehy as administrator and alleging his appointment

as administrator upon such petition; also alleging that the notes mentioned in the bill were delivered to him by Mrs. Mayer on or about June 23, 1904, and that she then informed him that the same was the property of her deceased daughter, and did not then or at any time thereafter inform him that she claimed any interest in them; that he shortly afterwards filed an inventory of the estate, which is attached to and made a part of the answer, particularly describing the Burling street property and the notes and securities mentioned in the bill; that he advertised for the adjustment of claims against the estate and proceeded in the ordinary and usual manner with the administration of the estate, and on February 16, 1906, filed a final report showing all moneys collected and paid out by him to that date, a copy of which report is attached to the answer, and that all of the disbursements shown by said report were made before he had received any notice that the complainant claimed any interest in the notes or personal property which had been turned over to him as administrator. The answer alleges that McCracken, at and before the appointment of Dennehy as administrator, claimed the notes and chattel property listed in the inventory as the surviving husband of Anna McCracken, and that he has ever since such appointment so claimed them and is now insisting that the administrator pay over the money and deliver the chattel property remaining in his hands to him, and that the complainant also now claims to be the owner of said notes and property. The answer further alleges that the administrator has collected all the notes and has received therefrom the sum of $11,730, and that he has paid out, in addition to the disbursements appearing in his report to the probate court, other sums of money as shown by an exhibit attached to the answer. It further alleges that on November 13, 1906, Dennehy purchased the remaining five notes which were secured by the trust deed on the Burling street property, in order to prevent a foreclosure of the trust

deed, and that such purchase was made by him with his individual funds for the benefit of the estate; that Dennehy is now the legal holder and owner of said notes and trust deed and is entitled to a lien on the Burling street property for the payment of the principal and interest due thereon, amounting to $3182. The answer also alleges that Dennehy has incurred certain liabilities in the settlement of the estate of Anna McCracken and in defending the various suits brought by the complainant against him, and that he should be permitted to deduct from the proceeds of the notes and securities which were delivered to him by Mrs. Mayer the amount due on the five notes now held by him and all sums paid and liabilities incurred by him in connection with the administration of the estate of Anna McCracken and in defending the various suits brought against him by Mrs. Mayer, and offers to pay the balance into court for the benefit of the person or persons who may be found entitled thereto. The answer alleges that the administrator is now, and has been at all times, ready to pay all moneys and deliver all effects received by him as administrator to the person legally entitled thereto, and only asks that he be protected from being compelled to pay any portion of such money a second time. The answer denies, however, that the proceeds of the property devised to Anna Mayer by the will of her father vested in the complainant upon the death of her daughter, but alleges that McCracken became entitled thereto as surviving husband of the deceased, and that complainant has no interest in the same.

The disbursements made by Dennehy since the filing of his report in the probate court, amounting to $606.50, consist of taxes upon the Burling street property, taxes upon the personal property in his hands, costs in the replevin suit brought for the recovery of the piano, and sums paid to stenographers for making transcripts of testimony to be used in the present case. The liabilities incurred consist of costs in the probate court in the matter of the estate of

Anna McCracken and attorney's fees for representing Dennehy in the various suits above mentioned to which he, as administrator and personally, was a party. He also claims as compensation, in addition to the sum for which he took credit in his report, the sum of $303.

On October 27, 1908, the appeal from the probate court and the suit to set aside the deed to the Burling street property were transferred from the circuit court to the superior court, and on the same day the replevin suit, which had been instituted in the superior court on May 25, 1906, was transferred from the law side of the court to the chancery side thereof. On the following day, by written stipulation signed by the respective solicitors for each of the parties, those three suits were consolidated with the suit commenced in the superior court on March 18, 1908, all of said causes to be heard and determined together by the superior court on the chancery side of the court, and it was agreed that all matters in controversy between any of the parties to any of said actions or causes should be finally heard, tried and determined and a decree determining all matters so in controversy entered by the superior court.

The consolidated causes came on for hearing before the court, and a decree was thereafter entered finding, among other things, that Anna Mayer, with the consent and co-operation of her mother, invested the funds received from the property at 147 Center street in the notes and mortgages in question and in the purchase of a piano, a sealskin sack, a fur muff, a sable boa and a gold watch and chain, and invested $1000 of such funds in the Burling street property; that shortly after the death of Anna McCracken John McCracken caused and procured Mrs. Mayer to join with him in obtaining the appointment of Dennehy as administrator of her daughter's estate, and represented to her that the law required her to deliver the notes and mortgages to Dennehy as part of the estate of Anna McCracken, and that she delivered the same to Dennehy believing that

the law required her to do so and not intending by such delivery to part with any right or title thereto and believing that the same would be returned to her in the process of administration; that at the time she delivered these notes and securities she insisted, and stated to McCracken, that the same were her property and belonged to her because of the provisions of her husband's will; that before delivering the same to Dennehy she was told by McCracken that her rights and interests in respect to them would be attended to and looked after by the attorney representing the administrator in the probate court, and relied upon that representation until October, 1905, when McCracken informed her that the notes and securities belonged entirely to him and not to her, and that he owned an equal interest with her in the Burling street property, and had been so advised by the attorney representing the administrator. The decree further finds that the consideration of $100 paid Mrs. Mayer by McCracken for the Burling street property was and is grossly inadequate, and that Mrs. Mayer was induced to convey the property to McCracken in ignorance of its real value and of the extent of her interest in the same. It also finds that when Mrs. Mayer delivered the notes and securities to Dennehy she said nothing to him about her husband's will or about any claim by her to such notes and securities; that the administrator made the disbursements disclosed by his answer without the order or direction of the probate court or any other court, and is only entitled to credit for the following sums paid out: $100 paid for attorney's fees on July 16, 1904; $35.65 costs in probate court, including publication notice; $85 paid for painting Burling street property; $249.51 paid for personal property taxes; $515 paid September 28, 1904, in reduction of mortgage debt against Burling street property; $530 paid March 28, 1905, in reduction of said mortgage debt; $60.53 paid April 25, 1907, for real estate tax, and $62.16 paid April 21, 1908, for real estate tax. The

decree further finds that the item of $1000 paid to Mc-
Cracken on September 3, 1904, was paid without authority
and without any right on his part to receive the same and
should be charged against him and Dennehy jointly, and
against which McCracken should be credited with $38.24
paid by him for tax redemption and with $100 paid by him
to Mrs. Mayer for the deed to the Burling street property.
It further finds that Dennehy personally purchased the five
notes secured by trust deed on the Burling street property
on November 13, 1906, and paid therefor the sum of $2900
by check of Charles Dennehy & Co. upon its bank account,
in which he had deposited all the money collected by him
from the notes and securities which were delivered to him
by Mrs. Mayer, and that at the time he purchased said five
notes there was on deposit in said bank account approxi-
mately $9000 received from the notes and securities which
had been delivered to him as administrator.

As conclusions of law applicable to the facts found in
the decree, the court held, among other things, that by the
will of John B. Mayer Anna Mayer took a base or deter-
minable estate in fee simple to the property devised to her
by the said will, and that upon her death her mother be-
came the owner thereof under the provisions of said will;
that the determinable character of the estate devised to
Anna McCracken in the property at 147 Center street, un-
der the provisions of said will, attached to the considera-
tion paid by the Northwestern Elevated Railroad Company
for the condemnation and acquirement of said property for
public service purposes and inured to the benefit of Veron-
icka Mayer; that Anna Mayer left no estate in the prop-
erty so devised to her which her husband could take by
inheritance; that Dennehy should be held to account to
Mrs. Mayer for all notes and securities and other property
delivered by her to him, or the proceeds thereof, less such
sums as he has been above in this decree found entitled to
credit; that Mrs. Mayer is the owner and entitled to the

possession of the chattel property in dispute; that Dennehy
is not chargeable with and should not be required to ac-
count for interest upon the fund in his hands derived from
the collection of the notes and securities; that Mrs. Mayer
is entitled to have the legal title to the Burling street prop-
erty restored to her upon giving McCracken credit for
$138.24 upon the $1000 found due her from him and Den-
nehy jointly; that the equities of the consolidated causes
are with Mrs. Mayer and that she is entitled to relief as
herein found. The decree ordered Dennehy to pay to Mrs.
Mayer the sum of $9092.15, and Dennehy and McCracken,
jointly and severally, to pay to her the sum of $861.76, and
awarded execution therefor. It awarded to Mrs. Mayer
the piano, the sealskin sack, the fur muff, the sable boa and
the watch and chain, and directed Dennehy to restore them
to her possession. It also set aside the deed to the Burling
street property from Mrs. Mayer to McCracken and vested
the title to that property in Mrs. Mayer, subject to a lien
in favor of Dennehy for the payment of the five notes for
$500 each, with interest, and ordered McCracken to exe-
cute and deliver to Mrs. Mayer a quit-claim deed to that
property, and in default thereof that the master in chancery
execute and deliver such deed. The decree awarded costs
in favor of Mrs. Mayer against McCracken and Dennehy
in all of the consolidated causes except in the suit brought
by Mrs. Mayer to set aside the deed.

McCracken and Dennehy, individually and as adminis-
trator, have prosecuted an appeal to this court, and assign
as error the action of the court in overruling the demurrer
to the bill filed on March 18, 1908, in overruling the pleas
filed by them to said bill, and in denying the motion for
leave to file the further and additional plea of the admin-
istrator thereto. They also assign as error practically all
the findings against them in the final decree, and the action
of the court in ordering them to pay to Mrs. Mayer the
sums of money required by the said decree to be paid, in

awarding to her the chattel property in controversy and in setting aside the deed to the Burling street property. Appellee has assigned cross-errors questioning the action of the court in allowing Dennehy credit for the items of $515 and $530 in satisfaction of the two notes secured by the trust deed upon the Burling street property and the items of $60.53 and $62.16 taxes against said property, in refusing to hold that Dennehy purchased all of the notes secured by trust deed on the Burling street property out of his individual funds and for his individual benefit, and in holding that Dennehy should not be charged with interest upon the fund in his hands.

WILLIAM H. BARNUM, for appellants.

JOHN L. BOLEN, (PARK PHIPPS, of counsel,) for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

Appellant McCracken first contends that the trial court erred in overruling the demurrer filed by both appellants to the bill in the superior court in what is termed the main cause, and also in overruling the two joint and several pleas filed to the same bill on September 30, 1908. They did not elect to stand by their demurrer but filed their pleas to the bill, and cannot now complain of the action of the court in overruling the demurrer. Nor is either of them in a position to question the ruling of the court on the sufficiency of the pleas. Dennehy abandoned his right to assign this action of the court as error by answering the bill. McCracken, it is true, elected to stand by his pleas and was defaulted, but he subsequently entered into the voluntary stipulation and agreement whereby the causes pending in the circuit court were transferred to the superior court, the replevin suit transferred from the law to the chancery docket and all of the causes consolidated. This agreement provided that said causes should be heard and determined

together and that one decree should be entered determining all the matters in controversy. The consolidation of these causes was a very proper step, as a determination of any one of them on the merits would be a determination of the merits of one or more of the others. McCracken had filed his answer to the bill to set aside the deed to the Burling street property and was entitled to contest that on the merits. The order consolidating these causes was not made by the court on its own motion or upon motion of either of the parties, but was made pursuant to the agreement of all the parties. Had Veronicka Mayer filed a motion for the consolidation of these causes, McCracken could properly have objected on the ground that he had invoked the doctrine of *res judicata* by pleas to the bill in the superior court, upon which, the same having been overruled by the court, he had elected to stand, and that he proposed to contest the bill to set aside the deed on its merits. Instead of such action being taken, McCracken joined with the other parties in a stipulation to consolidate all the causes and try them as one on the merits. By so doing he abandoned his right to rely upon his pleas, and the consolidation of these causes pursuant to this agreement had the effect of setting aside the default of McCracken to the bill filed in the superior court. McCracken appeared at the trial of the consolidated causes in person and by his solicitor and defended on the merits as to all the matters involved. He appears here by the same solicitor, and asks for a reversal of the decree both upon the ground that the court erred in overruling his pleas of *res judicata* and that it erred in its decree upon the merits. Having consented to the consolidation and having participated in the trial on the merits, where he testified fully in his own behalf, McCracken waived his right to have the action of the court in overruling his pleas reviewed.

Appellant Dennehy assigns as error the refusal of the court to permit him to file a further plea. This assignment cannot now be availed of, for the reason that after the

court refused to allow this additional plea to be filed Dennehy answered the bill, properly setting up as matters of defense the same matters relied upon in the proposed plea. By thus answering he preserved all his rights and secured the same consideration as to the matters set up by way of defense as he would have secured had the court allowed the plea to be filed.

The principal questions at issue and to be determined here depend upon the construction of the last will and testament of John B. Mayer. The third clause of this will gave to the daughter, Anna Mayer, (afterwards McCracken,) the fee to the real estate therein described, and, standing alone, created in her an estate in fee simple. It is the policy of our courts to adopt such a construction of a will as will give an estate of inheritance to the first devisee, unless there are other clauses in the will which disclose clearly that it was the intention of the testator to limit or qualify the estate devised. In this will there can be no question as to the intention of the testator, as by the eighth clause he discloses clearly and expressly that he desired to make an executory devise to Veronicka Mayer, her heirs and assigns forever, of the same property. This question has been before us so frequently that it is unnecessary to cite authorities as to the proper construction to be placed upon this will in determining the estate taken by the daughter, Anna, in the property devised to her by the third clause. The executory devise is valid, and Anna was given a base or determinable fee in the property at 147 Center street, which would be defeated by her death without issue during the lifetime of her mother. This property having been taken by condemnation proceedings, in which all the parties having any interest in the real estate were made defendants, the money awarded by the jury and paid by order of the court into the hands of the county treasurer took the place of the real estate, and was subject to the same limitations

under the will of John B. Mayer as the real estate itself had been.

It is contended on the part of appellants that under the holding of this court in *Friedman* v. *Steiner,* 107 Ill. 125, Anna had during her lifetime the absolute power to alienate this property and to pass to the purchaser a fee simple absolute, and that this was done by the conveyance to Buckingham. The holding of the court in the *Friedman case* is not in point on the question at issue here. In the *Friedman case* the devise of the real estate in controversy was to Mrs. Steiner and her heirs and assigns forever, upon the express condition that should she die intestate and without leaving lawful issue surviving, then the lands devised should be sold and the money paid to the executory devisees. In this case the conditions upon which the fee in Anna should be defeated are that she should die without children and during the lifetime of her mother. The condition that she should also die *intestate* as to this property was not attached as in the *Friedman case,* and she was therefore given no absolute power of alienation. Should she have conveyed this property by deed, the purchaser would have taken it burdened with the conditions imposed upon it in the will of her father.

Appellee relies upon the case of *Orr* v. *Yates,* 209 Ill. 222, as overruling that part of the *Friedman case* which held that Mrs. Steiner had the absolute power of alienation of the lands devised to her, but we do not perceive any conflict in the two opinions. The following language in the *Orr case,* at bottom of page 232, "and in so far as a different doctrine is announced in the *Friedman case* it has not been approved," had no necessary application to the matters involved. In the *Friedman case* the gift over was conditioned to take effect upon the death of Mrs. Steiner without issue her surviving *and intestate.* It is apparent that if Mrs. Steiner should alienate either by deed or by will, she could not die intestate as to that property and the

gift over would fail. In the *Orr case* the gift over was not conditioned, in part, upon the death of the first taker intestate. Dying intestate as to the property being one of the conditions upon which the executory devise should take effect, we properly held in the *Friedman case* that Mrs. Steiner had power to convey an indefeasible title to the property devised to her. The reasoning on that phase of the *Friedman case* is of no controlling force here.

While there can be no question, under the holdings of this court, that Anna McCracken took a base or determinable fee in the property devised to her by the third clause of the will, yet were this not true appellants should be estopped here from contending otherwise. Upon the conclusion of the condemnation proceedings, whereby this property was taken by the Northwestern Elevated Railroad Company, the court, by reason of the provisions of the will of Mayer, ordered the money awarded to the owners of the property to be paid to the county treasurer. Anna thereupon filed a bill in the superior court, to which her mother, (the appellee herein,) the railroad company and the county treasurer were made defendants, setting up the will of her father and praying that the same be construed and that some proper person be appointed as trustee of the money which had been so paid to the county treasurer. The superior court construed the will as we have herein above construed it and appointed Mrs. Mayer as the trustee of the fund, and the same was paid over to her by the county treasurer upon the order of the court. Appellants are claiming this fund through Anna McCracken, and as she voluntarily applied to the superior court for a construction of the will and the appointment of a trustee for this fund, they are estopped to deny or contradict the construction of the will thus secured and acquiesced in by her. The decree of the superior court in the consolidated causes as to the estate taken by Anna McCracken under the will of her father and as to the interest of Veronicka Mayer in the fund created

245—37

by the taking of this property by condemnation proceedings was correct.

That part of the decree setting aside the deed of Veronicka Mayer to the Burling street property is assigned as error. This assignment is well made. After Veronicka Mayer had filed her bill in the circuit court and the same had been dismissed on demurrer, and after she had filed her petition in the probate court and the same had been dismissed upon hearing, in both of which she claimed to own the whole of the property in the hands of Dennehy, appellant McCracken filed his bill for the partition of the Burling street property between himself and Veronicka Mayer. The same attorney who had represented her in the bill in the circuit court and in the petition in the probate court represented her in the partition suit. Through this attorney Mrs. Mayer carried on negotiations with McCracken for the settlement of the partition suit. As a result of these negotiations, and with the consent and at the request of Veronicka Mayer, her attorney made a proposition to McCracken to convey to him all the interest of Veronicka Mayer in this real estate for the sum of $100. This proposition was accepted by McCracken, and Mrs. Mayer, still acting upon the advice of her attorney, executed a deed to McCracken of her interest in this property and accepted in payment therefor the sum agreed upon. It cannot be contended that Mrs. Mayer was ignorant of her rights at this time. She had already contended in two forums that her daughter, at the time of her death, owned no property whatever except that derived through the will of her father, and that she, as executory devisee of that property under her husband's will, was the owner of and was entitled to the same. In the settlement of the partition suit, which terminated in the execution of the deed to the Burling street property, Veronicka Mayer was represented by an attorney who was acquainted with all the facts. He was familiar with her claims and she was following his advice.

No fraud was practiced upon her, but with full knowledge of all the facts she executed this deed for the purpose of settling this litigation. She has no ground upon which to ask to have this deed set aside, and it was error for the superior court to so decree.

There is also involved the question of the ownership of a piano, a sealskin sack, a sable boa, a fur muff and a gold watch and chain. By the decree of the superior court these articles were found to have been purchased with a part of the money acquired by the condemnation proceedings, and therefore the property of Mrs. Mayer under the will of her husband. This part of the decree is, we think, not supported by the evidence. The only testimony given in regard to the purchase of these articles by the daughter tends to show that the money used to purchase them was derived from the interest accruing on the principal sum realized from the condemnation proceedings and was not a part of the principal sum itself. Under the will of her father Anna McCracken was entitled to the full use and possession of this property during her lifetime, and when the real estate became converted into cash by reason of the condemnation proceedings she was entitled to the interest on the fund thus created. Mrs. Mayer had no claim or right whatever to the interest or the earnings of this fund. Any property purchased by the daughter with the earnings of this fund, and any part of the earnings which may have been unexpended in her hands at the time of her death, became a part of her estate. Aside from this question, Veronicka Mayer cannot now be heard to claim the sealskin sack, boa, muff and watch and chain. On January 12, 1906, McCracken filed his petition in the probate court for citation against Mrs. Mayer, and upon the hearing of the same she was ordered to turn over all the chattel property here involved, except the piano, to the administrator as the property of the estate. Mrs. Mayer complied with the order of the court and took no appeal. She is therefore estopped

from claiming those articles at this time. The superior court erred in awarding the piano, sealskin sack, sable boa, fur muff and gold watch and chain to Mrs. Mayer. The administrator is entitled to the possession of those articles as a part of the estate of Anna McCracken.

This disposes of the question of the title to all the property involved, and we now come to the question of the liability of Dennehy and McCracken. The superior court found that at the time Veronicka Mayer turned over the notes and mortgages which constituted the fund derived from the condemnation proceedings to Dennehy, as administrator of the estate of her daughter, she informed McCracken that such notes and mortgages belonged to her and not to the estate of her daughter, but that she did not so inform Dennehy. We have made a careful inspection of this record, and while it is true that Mrs. Mayer testifies in this case that she did so inform McCracken but that she did not say anything about the matter to Dennehy at that time, her testimony is not at all satisfactory on this point. She testified at the hearing on the petition in the probate court, and her testimony at that time on this same question was directly contradictory of the testimony she now gives. She admitted upon this hearing to having given such testimony in the probate court but made no attempt to explain the contradiction. We are of the opinion, based on the testimony of Veronicka Mayer alone, that she never told anyone that she claimed any interest in these notes and mortgages until McCracken informed her that Dennehy was ready to make his final report and had fixed upon a date for the final settlement of the estate. Then for the first time Mrs. Mayer informed McCracken and Dennehy that she claimed to own these notes and mortgages. She then employed an attorney, and the various actions detailed in the foregoing statement were instituted by the several parties to this suit. Mrs. Mayer not only delivered these notes and mortgages to Dennehy without

making any claim to having any interest in them and without giving him any intimation whatever that they did not belong properly to the estate of Anna McCracken, but, during the time intervening between then and the time of the giving of notice of final settlement, by various acts treated this fund as properly a part of the estate of her daughter. At the time of her death, aside from the interest she had in this fund, Mrs. McCracken owned no property except her interest in the real estate on Burling street, and the piano, sealskin sack, boa, muff, watch and some small articles of jewelry. Aside from the notes and mortgages in question, none of this property was converted into cash, which fact was known to Mrs. Mayer. On June 16, 1905, Mrs. Mayer joined with McCracken in a written order on Dennehy to pay to M. Oberweis & Co. $85, to be charged to the account of the estate of Anna McCracken. This was for painting done by Oberweis on the Burling street property. At the time the first note for $500 and interest was paid, being one of the series of seven notes given by Anna McCracken and secured by trust deed on the Burling street property, Mrs. Mayer was present with McCracken and made no objection to the payment. She knew that the amount was paid by the check of Dennehy, given as administrator, and that it was paid out of the funds in his hands as administrator of the estate of her daughter. Up until she claimed to own this fund, in October, 1905, every act of Mrs. Mayer was calculated to induce Dennehy to believe that this property belonged to the estate of Anna McCracken and was properly in his hands as administrator.

Dennehy has paid out none of the money in his hands, except for taxes and some costs and stenographer's fees in connection with this litigation, since Mrs. Mayer notified him that she claimed to own this fund. He now contends by his answer to the bill in the superior court and under the proof made in the consolidated cases, that Mrs. Mayer should be estopped from holding him liable for anything

except that portion of the funds remaining unexpended in his hands. By her actions in turning over to Dennehy these notes and mortgages as a part of the property of the estate of her daughter, and by continuing for more than a year to treat this fund as being properly in the hands of Dennehy as administrator, Mrs. Mayer led the administrator to believe that she had no interest in or claim to this fund and that the same was a part of the estate of her daughter. Having thus been led by the only person acquainted with all the facts and with the identity of this fund to treat the same as a part of this estate, Mrs. Mayer is now estopped to claim from Dennehy any part of this fund which he had expended or paid out as administrator, under the belief that it was part of the estate of Anna McCracken, prior to the time when he was advised that Mrs. Mayer claimed to be the owner of the whole fund. "As a general rule, a party will be concluded from denying his own acts or admissions which were expressly designed to influence the conduct of another and did so influence it, and when such denial will operate to the injury of the latter." (*Kinnear* v. *Mackey,* 85 Ill. 96.) To the same effect are *Baker* v. *Pratt,* 15 Ill. 568, *Smith* v. *Newton,* 38 id. 230, and *Hill* v. *Blackwelder,* 113 id. 283. So in this case, Mrs. Mayer is estopped on account of her acts and admissions, which were expressly designed to influence the conduct of Dennehy, from denying that he had the right to treat this fund as a part of the estate of Anna McCracken, or that he had the right to pay out such sums as he did properly expend and pay out prior to the notice of her claim to the property.

It is insisted by appellee that Dennehy having made partial distributions to McCracken without any order of court, should be held accountable for the amounts so paid. This estate was solvent. It was not shown that there was any indebtedness except the notes secured by trust deed on the Burling street property, and none of these notes were

filed as a claim against this estate. If this fund had been a part of the estate of Anna McCracken, it being personal property and she having died childless and intestate, her husband would have been entitled to take the same as the sole and only heir. Before Mrs. Mayer asserted any claim to the fund the administrator had full right and authority to treat this as a part of the estate of her daughter. In making distribution, either partial or final, of the personal estate of Anna McCracken, the administrator owed no duty whatever to Veronicka Mayer to secure an order of court. She is not now claiming this fund as a creditor or as a distributee of the estate, but is claiming it upon the ground that the fund never was a part of her daughter's estate. In the absence of fraud or misconduct on the part of Dennehy she cannot now question any of his acts in reference to this fund up until the time he was served with notice of her claim to the property. So far as she is concerned, it is immaterial whether Dennehy secured an order of the probate court, or not, before making the partial distributions he did make to McCracken. The superior court erred in its decree making Dennehy jointly liable with McCracken for payments made to McCracken by way of partial distributions before Mrs. Mayer asserted her claim to the property. Dennehy is only liable for the property remaining in his hands after allowing him for such costs and expenses as he is entitled to and the payments made to McCracken by way of partial distribution. The court properly held that the five promissory notes purchased by Dennehy, and which were secured by a trust deed on the Burling street property, were purchased by him in his individual capacity and not for the estate. He should account to Mrs. Mayer without reference to that transaction.

Appellee contends that the superior court erred in holding that Dennehy should not be charged with interest upon the funds in his hands, and assigns cross-error upon this point. Dennehy collected the notes and mortgages turned

over to him by Mrs. Mayer as the same came due, and deposited the proceeds in his own name or the name of the firm with which he was connected, and mingled it with his own moneys in his private bank account. It is shown that he always had on hand in such bank account a sum more than ample to pay the amount which he held as administrator, and that he never used this money in any way. In Williams on Executors (1309) it is said there are two grounds on which an executor or administrator may be charged with interest: "First, that he has been guilty of negligence in omitting to lay out the money for the benefit of the estate; second, that he himself has made use of the money to his own profit and advantage or has committed some other misfeasance." (*Rowan* v. *Kirkpatrick,* 14 Ill. 1.) In discussing the liability of an administrator to pay interest on the funds of the estate in his hands, we said in *Estate of Schofield,* 99 Ill. 513: "The mere fact that an administrator mingles the trust funds with his own by depositing the money belonging to the estate in his own name, as he does his individual money, cannot be held a sufficient ground to charge the administrator with interest. We are aware of no law which requires an administrator to keep the funds belonging to the estate separate and distinct from his own funds, and in the absence of a legal requirement no liability can be incurred." Dennehy made no use whatever of any part of this fund, and was ready at all times to respond to any demand which could be legally made upon him to pay it over. It was not error for the superior court to hold that Dennehy, whether he held this fund as administrator or as a trustee, should not be charged with interest on the same.

As to the question of the amount which Dennehy is entitled to deduct for his expenses and compensation, it is conceded on the part of appellee that he should be entitled to the first claim made by him for attorney's fees, amounting to $100, and to $35.65 costs in the probate court, all of

which has been paid. In addition to this, he should undoubtedly be allowed the amounts paid out by him in the way of personal taxes upon the fund in his hands which is now the property of Veronicka Mayer. The costs now remaining unpaid in the probate court, the costs of the replevin suit, and the attorney's fees, if any should be allowed by the probate court, incurred in prosecuting the replevin suit, should not be deducted from this fund but should be realized by the administrator from the property of the estate of Mrs. McCracken in his hands. Veronicka Mayer having turned over this property to Dennehy as a part of the estate of her daughter, and having thereby induced him, as administrator, to assume charge of it and to collect the same as it fell due, we are of the opinion that he should be allowed commissions to the amount of three per cent upon the amount collected by him on the notes and mortgages so turned over by Mrs. Mayer, which would be reasonable compensation under the facts in this case. He is also entitled to deduct from this fund the expense of making the transcript of the testimony of Mrs. McCracken on hearing in the probate court, for use in the superior court.

Appellant McCracken is liable to Veronicka Mayer for the amounts paid to him from this fund as a part of his distributive share as the sole distributee of the estate of Anna McCracken. These items consist of $1000 paid September 3, 1904, $515 paid September 28, 1904, $530 paid March 28, 1905, and $85 paid June 17, 1905. The amounts so paid to McCracken on September 28, 1904, and March 28, 1905, having been paid for the purpose of taking up two of the notes secured by the trust deed on the Burling street property and the money having been used for that purpose, Veronicka Mayer is entitled to a lien on the Burling street property to the extent of the amount of those two notes, her lien to be co-ordinate with that of Dennehy under the trust deed securing the notes. McCracken should be required to first apply payments made by him to Mrs.

Mayer, under the decree to be entered herein, upon that part of the amount due from him which is not secured by the lien on the Burling street property. The costs in the consolidated causes in the superior court should be adjudged against Veronicka Mayer.

Complaint is made by appellee that McCracken was an incompetent witness to testify to any of the matters in controversy, and that the testimony of McHugh, the attorney for appellants, should not be considered as entitled to any weight. As the conclusions we have arrived at were not affected by the testimony of either of these two witnesses we do not feel it necessary to consider those points.

The decree of the superior court is reversed and the cause is remanded to that court, with directions to enter a decree in conformity with the views expressed in this opinion.

*Reversed and remanded, with directions.*